Arthur T. Donaldson and Vivid, Inc.,
Plaintiffs-Respondents,†

v.

Town of Spring Valley, Defendant-Appellant.

Court of Appeals

*No. 2007AP1418. Submitted on briefs February 8, 2008.
—Decided March 20, 2008.*

2008 WI App 61

(Also reported in 750 N.W.2d 506.)

† Petition to review denied June, 10, 2008.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark A. Schroeder* of *Consigny, Andrews, Hemming & Grant, S.C.*, Janesville.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *David C. Moore* of *Nowlan & Mouat LLP*, Janesville.

Before Higginbotham, P.J., Lundsten and Bridge, JJ.

¶ 1. LUNDSTEN, J. The Town of Spring Valley has adopted a zoning ordinance that effectively bans a sign that Arthur Donaldson wants to erect along a highway directing travelers to an attraction that he owns. Donaldson filed a complaint against the Town seeking a declaratory judgment that the Town's ban on his proposed sign is preempted by Wis. Stat. § 84.30(3)(a) (2005–06).[1] The circuit court agreed, and issued a judgment in favor of Donaldson. The Town appeals. We conclude that the Town's ban is not preempted by § 84.30(3)(a) and, therefore, reverse and remand with directions.

### Background

¶ 2. Donaldson owns an attraction open to the public in Iowa County. He also owns land in Rock County adjacent to State Highway 11, a federal-aid highway, on which he wishes to erect a directional sign relating to his attraction. Donaldson's Rock County land is located in the Town of Spring Valley and is zoned "agricultural" by the Town. Under a Town zoning ordinance, directional signs like Donaldson's proposed sign are banned in areas that are not zoned business or industrial. Thus, directional signs are banned in areas zoned residential and agricultural.[2]

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] The Town's ban applies to *off-premises* signs. Donaldson's proposed directional sign is an off-premises sign because the

¶ 3. The Town's zoning ordinance prompted Donaldson to file a complaint in the circuit court seeking a declaratory judgment. Donaldson asked the court to declare that he has the right to construct a directional sign on his agricultural land in the Town, so long as his sign complies with standards promulgated under WIS. STAT. § 84.30(3)(a). Donaldson argued that the Town's zoning ordinance banning his directional sign along Highway 11 is preempted by § 84.30(3)(a), a statute regulating directional signs visible from federal-aid highways.

¶ 4. The circuit court granted summary judgment in favor of Donaldson. The court declared that the Town "may not forbid the erection of a directional sign erected under WIS. STAT. § 84.30(3)(a) on a federal-aid primary highway."

### *Standard Of Review And Applicable Principles Of Statutory Interpretation*

¶ 5. We review summary judgment *de novo,* applying the same methodology as the circuit court. *Brownelli v. McCaughtry,* 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). That methodology is well established and need not be repeated in its entirety here. Suffice it to say that summary judgment is appropriate when undisputed facts show that a party is entitled to judgment as a matter of law. *See Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

---

proposed location is not on the premises of his attraction. Because the off-premises aspect of the Town's zoning ordinance is not an issue in this case, we ignore it.

¶ 6. The interpretation and application of a statute to a set of facts is a question of law that we review *de novo. See Wood v. City of Madison*, 2003 WI 24, ¶ 11, 260 Wis. 2d 71, 659 N.W.2d 31. We give statutory language its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We must construe a statute in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results. *Id.*, ¶ 46. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. It is not enough that there is a disagreement about the statutory meaning; the test for ambiguity examines the language of the statute 'to determine whether "well-informed persons *should have* become confused," that is, whether the statutory . . . language *reasonably* gives rise to different meanings.' " *Id.*, ¶ 47 (citations omitted). When a statute is unambiguous, we need not look to extrinsic sources, such as legislative history. *Id.*, ¶ 46. Rather, we apply the statute according to its plain meaning. *Id.*

### Discussion

¶ 7. Donaldson argues that WIS. STAT. § 84.30(3)(a) preempts the Town from using its zoning authority to ban directional signs visible from a federal-aid highway. According to Donaldson, such signs are regulated only under § 84.30(3)(a), and the Town's zoning ordinance is impermissibly more restrictive than this state law. We disagree. Our discussion begins with a brief summary of

the backdrop for § 84.30(3) and then turns to the merits of Donaldson's arguments.

¶ 8. Federal law, 23 U.S.C. § 131, encourages states to adopt standards applicable to signs viewable from interstate and federal-aid highways. The standards promoted by this federal law concern issues such as size, number, and spacing. The law's purpose is to "protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." 23 U.S.C.S. § 131(a) (2001).

¶ 9. To encourage compliance, Congress created a financial incentive. The law requires a reduction in federal-aid highway funds to a state if "the Secretary [of the U.S. Department of Transportation] determines [that the state] has not made provision for *effective control* of the erection and maintenance . . . of . . . signs . . . which are within six hundred and sixty feet of . . . the [federal highway] system." 23 U.S.C.S. § 131(b) (emphasis added).

¶ 10. The term "effective control," as it relates to Donaldson's proposed sign, means limiting "such signs . . . to . . . directional . . . signs . . . pertaining to . . . scenic and historical attractions, which are required or authorized by law, which shall conform to national standards . . . promulgated by the Secretary . . . concerning lighting, size, number, and spacing of signs, and such other requirements as may be appropriate to implement this section." 23 U.S.C.S. § 131(c)(1).

¶ 11. In response to 23 U.S.C. § 131, our legislature enacted WIS. STAT. § 84.30. *Vivid, Inc. v. Fiedler*, 219 Wis. 2d 764, 775, 580 N.W.2d 644 (1998). The parties focus on a specific part of that statute, § 84.30(3)(a), which reads:

(3) SIGNS PROHIBITED. *No sign* visible from the main-

229

traveled way of any interstate or federal-aid highway *may be erected* or maintained, *except the following:*

(a) *Directional* and other official *signs,* including, but not limited to, signs pertaining to natural wonders, scenic and historical attractions, *which are required or authorized by law, and which comply with rules* which shall be *promulgated by the [Wisconsin DOT]* relative to their lighting, size, number, spacing and such other requirements as are appropriate to implement this section, *but such rules shall not be inconsistent with, nor more restrictive than, such national standards as may be promulgated* from time to time *by the secretary of transportation of the United States* under 23 USC 131(c).

(Emphasis added.) The parties agree that the dispositive question here is whether § 84.30(3)(a) preempts a town from using zoning authority to ban directional signs that are otherwise permitted under the statute and rules promulgated thereunder.[3]

---

[3] We assume, without deciding, that in the absence of Wis. Stat. § 84.30(3), the Town has the authority to ban directional signs visible from highways. Before the circuit court and this court, the Town has argued that it has the authority to ban directional signs visible from state highways, including the federal-aid highway involved in this case. Boiled down, the Town argues that, exercising its village powers, it has general authority to regulate directional signs under various statutes, including Wis. Stat. §§ 60.10(2)(c), 60.22(3), and 61.34(1). Although Donaldson argues that none of the statutes the Town relies on grant such power regarding *signs on state highways,* he also asserts that "[t]he only question in this case is whether the Town has powers over directional signs on state highways, despite the specific provisions of Wis. Stat. § 84.30(3)(a)." The circuit court implicitly adopted Donaldson's view of the question presented and necessarily assumed that, in the absence of § 84.30(3), the Town had the authority to regulate directional

¶ 12. Donaldson argues that WIS. STAT. § 84.30(3)(a) preempts local laws banning directional signs that comply with rules promulgated by the Wisconsin DOT under that statute. He reasons that because § 84.30(3)(a) expressly provides that Wisconsin DOT rules governing directional signs "shall not be inconsistent with, nor more restrictive than," national standards, it necessarily follows that local (town) rules may not be more restrictive than either federal standards or state rules promulgated under § 84.30(3)(a). Donaldson states: "[T]he maximum [signage] permitted by federal law has been chosen by the Wisconsin legislature as the maximum [signage] *required* in Wisconsin." (Original emphasis deleted; emphasis added.)

¶ 13. We agree with the Town's response that Donaldson's argument fails because it is inconsistent with the two-condition structure of WIS. STAT. § 84.30(3)(a).

¶ 14. The directional-sign exception to the general prohibition on signs visible from a federal-aid highway, WIS. STAT. § 84.30(3)(a), contains two independent conditions. To fit this exception to the general prohibition, a sign must:

---

signs like the one Donaldson wants to erect. We make the same assumption.

We also note that, although the phrase "Directional and other official signs" in WIS. STAT. § 84.30(3)(a) might be read as covering only governmental signs, it is undisputed that Donaldson's proposed private sign is covered by this language. The parties' unspoken agreement is apparently based on WIS. ADMIN. CODE § Trans 201.05(1)(c) and (h), WIS. ADMIN. CODE § Trans 201.05(2), and corresponding federal rules, 23 C.F.R. § 750.153(m) and (r) and 23 C.F.R. § 750.154(f)(1) and (2). We do not address the question.

- be "required or authorized by law,"

"and"

- must "comply with rules which shall be promulgated by the department relative to their lighting, size, number, spacing and such other requirements as are appropriate to implement this section, but such rules shall not be inconsistent with, nor more restrictive than, such national standards as may be promulgated from time to time by the secretary of transportation of the United States under 23 USC 131(c)."

Wis. Stat. § 84.30(3)(a). Stated more succinctly, a sign must: 1) be "required or authorized by law," and 2) comply with rules promulgated by the Wisconsin DOT.

¶ 15. Donaldson's analysis fails to acknowledge that the statutory phrase he relies on, "nor more restrictive than," does not modify the first "required or authorized by law" condition. Rather, under the plain language of the statute, "nor more restrictive than" is a part of the second condition. More specifically, the second condition requires that a sign must "comply with rules . . . promulgated by [the Wisconsin DOT that are] . . . not . . . inconsistent with, *nor more restrictive than,* . . . national standards . . . promulgated . . . by [the U.S. DOT]." Wis. Stat. § 84.30(3)(a) (emphasis added).

¶ 16. When the second condition is properly viewed as an independent condition, it becomes apparent that the phrase "nor more restrictive than" has no arguable application to the Town's zoning ordinance. The Town does not argue that Donaldson's proposed directional sign is impermissible because it does not comply with rules promulgated by the Wisconsin DOT,

and no one suggests that DOT rules are impermissibly more restrictive than federal standards.

¶ 17. A preemption issue would arise if the Town attempted to impose different rules than those imposed by the Wisconsin DOT. For example, if the Town permitted directional signs on land zoned agricultural, but required that such signs be smaller or spread farther apart than state rules, then Donaldson could plausibly argue that the Town's rule is preempted by WIS. STAT. § 84.30(3)(a) because that statute puts the Wisconsin DOT in sole control of such standards. We do not suggest that this preemption argument would prevail, only that our hypothetical presents an arguable preemption issue.

¶ 18. Having concluded that the second condition in WIS. STAT. § 84.30(3)(a) does not preempt the Town's ban on directional signs, we turn our attention to whether the Town's ban runs afoul of the first condition. Under the first condition, a sign must be "required or authorized by law." Because it is undisputed that Donaldson's proposed sign is not required by any law,[4] the question is whether the sign is authorized by law.

¶ 19. The Town's analysis of the phrase "authorized by law" is simple. "[A]uthorized by law" is independent of the second "rules promulgated" condition and is not otherwise defined in WIS. STAT. § 84.30. Thus, according to the Town, "authorized by law" is a reference to whether a sign is authorized by a law other than

---

[4] Donaldson presents examples of signs that are required by law, such as directional signs at certain intersections required by WIS. STAT. § 86.19(6). He does not contend that his proposed sign is "required" by any law as that term is used in WIS. STAT. § 84.30(3)(a).

§ 84.30 and rules promulgated thereunder. Finally, because there is no limitation on the source of other law, there is no reason why other law may not be a local zoning ordinance. We see no flaw in this logic.[5]

¶ 20. Donaldson's contrary argument is that "authorized by law" should be read as a reference to another state or federal law, rather than the law of a governmental body within the state. But Donaldson does not explain why this might be true. He provides no rationale and points to nothing in the state statutes, the federal law, or the history of either, supporting that reading.

¶ 21. Donaldson makes other arguments, but they are all based on the erroneous assumption that there are not two independent conditions in WIS. STAT. § 84.30(3)(a). For example, Donaldson asserts that the "basic purpose" of § 84.30(3) is to permit directional

---

[5] The Town argues that we should defer to the Wisconsin DOT's interpretation of the statutes, as evidenced by a sign permit form created by that agency. The sign permit form states that applicants for signs must comply with all local laws, including "local zoning or outdoor advertising control ordinances." We question whether the Wisconsin DOT form constitutes the sort of agency interpretation of a statute to which we might defer. *See Stoughton Trailers, Inc. v. LIRC,* 2007 WI 105, ¶¶ 26–29, 303 Wis. 2d 514, 735 N.W.2d 477 (describing the three levels of deference accorded an administrative agency's interpretation of a statute). However, because we perceive no ambiguity in the statute, there is no reason to defer to any agency interpretation of the statute. *See Racine Harley-Davidson, Inc. v. State Div. of Hearings and Appeals,* 2006 WI 86, ¶ 17, 292 Wis. 2d 549, 717 N.W.2d 184 (courts do not defer to an agency construction of a statute that directly contravenes the words of the statute). Thus, we do not address whether the DOT form provides a basis for an agency decision to which we might accord deference.

signs, such as the one he wants to erect, "to the extent permitted by federal law." However, the only support he offers for this assertion ignores the separate "required or authorized by law" condition. Donaldson reasons that § 84.30(3) does not impose stricter limitations on directional signs than federal law and, indeed, expressly directs that Wisconsin standards not be "more restrictive than . . . national standards." WIS. STAT. § 84.30(3)(a). This is true about the second condition, but not the first.

¶ 22. Similarly, Donaldson glosses over the first "required or authorized by law" condition when he argues that the Town's ban on directional signs is preempted by state law because "it is clear that the legislature intended to create a window for directional signs that is at least as wide as the window permitted by federal law" and the Town has enacted a standard that is "more restrictive than" federal standards.

¶ 23. At bottom, Donaldson's interpretation of WIS. STAT. § 84.30(3)(a) is necessarily that *all* ordinances that could in any manner be deemed more restrictive than federal law and, therefore, more restrictive than DOT regulations are preempted. This interpretation cannot be correct, however, for a reason that should be apparent by now. Donaldson's interpretation renders the condition "required or authorized by law" meaningless. Under Donaldson's view, the words "which are required or authorized by law, and" could be removed from the statute with no change in meaning.

¶ 24. Finally, we address Donaldson's assertion that the Town's ban on signs is comparable to a local ban on the chemical treatment of lakes found to be preempted by state authority in *Wisconsin's Environmental Decade, Inc. v. DNR*, 85 Wis. 2d 518, 271 N.W.2d 69 (1978). The instant case is distinguishable from

*Wisconsin's Environmental Decade* in several respects, but it is sufficient to say that the statutes at issue in that prior decision did not contain a phrase comparable to WIS. STAT. § 84.30(3)(a)'s "required or authorized by law," which refers to other laws outside § 84.30.

### Conclusion

¶ 25. We conclude that the Town's ban on directional signs in areas zoned agricultural is not preempted by WIS. STAT. § 84.30(3)(a). Accordingly, we reverse the judgment, remand, and direct the circuit court to grant summary judgment in favor of the Town.

*By the Court.*—Judgment reversed and cause remanded with directions.