Bryan CASPER, Susan Casper, Michael Casper, Thomas Casper, Sara Janey and Sharon Janey, Plaintiffs-Respondents,†

BLUE CROSS BLUE SHIELD UNITED OF WISCONSIN, Primax Recoveries, Inc., Allstate Insurance Company, American Family Mutual Insurance Company and Milwaukee County Department of Health & Social Services, Involuntary-Plaintiffs,

v.

AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, Mark Wearing, Bestway Systems, Inc., RJW, Inc., Transport Leasing/Contract, Inc., Applied Industrial Technologies, Inc., Jeffrey E. Wenham, United States Fidelity and Guaranty Company, Federal Insurance Company, Continental Casualty Company, John Doe, Defendants,

OLD REPUBLIC INSURANCE COMPANY and Ryder Truck Rental, Inc., Defendants-Appellants.
[Case No. 2006AP1229.]

BLUE CROSS BLUE SHIELD UNITED OF WISCONSIN, Primax Recoveries, Inc., Allstate Insurance Company, American Family Mutual Insurance Company and Milwaukee County Department of Health & Social Services, Involuntary-Plaintiffs,

---

† Petitions to Review granted 6/28/10.

Sara JANEY, a minor, by her Guardian ad Litem, Sharon Janey, Susan Casper, Thomas Casper, a minor, by his Guardian ad Litem, Bryan Casper and Michael Casper, a minor, by his Guardian ad Litem, Plaintiffs-Appellants,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant-Respondent,

AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, Mark Wearing, Bestway Systems, Inc., RJW, Inc., Transport Leasing/Contract, Inc., Applied Industrial Technologies, Inc., Jeffrey E. Wenham, Ryder Truck Rental, Inc., Old Republic Insurance Company, United States Fidelity and Guaranty Company, Federal Insurance Company, Continental Casualty Company and John Doe, Defendants.
[Case No. 2006AP2512.]

Bryan CASPER, Susan Casper, Michael Casper, a minor, by his Guardian ad Litem, Thomas Casper, a minor, by his Guardian ad Litem, Sara Janey, a minor, by her Guardian ad Litem and Sharon Janey, Plaintiffs-Respondents,†

BLUE CROSS BLUE SHIELD UNITED OF WISCONSIN, Primax Recoveries, Inc., Allstate Insurance Company, American Family Mutual Insurance Company and Milwaukee County Department of Health & Social Services, Involuntary-Plaintiffs,

v.

81

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., American International South Insurance Company, Mark Wearing, Bestway Systems, Inc., RJW, Inc., Transport Leasing/Contract, Inc., Applied Industrial Technologies, Inc., Ryder Truck Rental, Inc., Old Republic Insurance Company, United States Fidelity and Guaranty Company, Federal Insurance Company, Continental Casualty Company and John Doe, Defendants,

Jeffrey E. WENHAM, Defendant-Appellant.†
[Case No. 2007AP369.]

Court of Appeals

*Nos. 2006AP1229, 2006AP2512 and 2007AP369. Submitted on briefs October 6, 2009.—Decided December 22, 2009.*

2010 WI App 2

(Also reported in 779 N.W.2d 444.)

† Petitions to Review granted 6/28/10.

88

On behalf of the plaintiffs-petitioners-appellants, the cause was submitted on the briefs of *Alan H. Deutch, James L. McAlister, Charles W. Kramer* and *Monte E. Weiss* of *Deutch & Weiss, LLC*, Milwaukee.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Larry J. Britton* and *Shannon M. Trevithick* of *Britton & Associates, S.C.*, Milwaukee.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert J. Lauer* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ross A. Anderson* and *Timothy H. Posnanski* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. This consolidated case arises out of an action commenced following a collision between the Casper family's minivan and a truck driven by Mark Wearing in the course of his employment. There are three separate appeals pending before us: (1) the Casper family's appeal of the circuit court's order denying its motion for default judgment and granting National Union Fire Insurance Company of Pittsburgh, P.A.'s ("National Union") motion for summary judgment; (2) Ryder Truck Rental, Inc. ("Ryder") and Old Republic Insurance Company's ("ORIC") appeal of the circuit court's denial of their motion for summary judgment; and (3) Jeffrey Wenham's appeal of the

circuit court's order reinstating the Casper family's negligence claim against him as an individual.[1] For the reasons which follow, we affirm the circuit court's first and third orders above and reverse the second.

## BACKGROUND

¶ 2. In May 2003, the Casper family and Sara Janey (the girlfriend of the Caspers' oldest son, Michael Casper) were taking a family trip from the Casper family's home in Sheboygan to Milwaukee. At the intersection of 51st Street and Brown Deer Road, while the Casper family's minivan was stopped at an intersection, Wearing slammed his truck into the rear of the minivan at approximately forty to forty-five miles per hour.

¶ 3. As a result of the collision, Michael is now a quadriplegic. Janey suffered, among other injuries, a traumatic brain injury, multiple leg and pelvis fractures, and one of her kidneys no longer functions. Bryan, Susan, and Thomas Casper suffered lesser, but still serious injuries.

¶ 4. At the time of the accident, Wearing was co-employed by Transport Leasing/Contract, Inc. ("TLC") and Bestway Systems, Inc. ("Bestway"), and the truck he was driving had been leased to Bestway by Ryder. The Caspers and Janey filed suit (collectively, "the Caspers" or "the Casper family").

---

[1] All three appeals arise from Milwaukee County Circuit Court Case No. 2004CV5852. Each appellant filed a petition for leave to appeal a nonfinal order of the circuit court. In each instance, the petition was granted. *See* WIS. STAT. § 808.03(2) (2007–08).

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

DISCUSSION

## I. The Casper Family's Appeal

¶ 5. The Caspers appeal the circuit court's orders: (1) granting National Union's motion to extend time to answer and denying the Caspers' motion for default judgment against National Union; and (2) granting National Union's motion for summary judgment on the Caspers' direct action claims. We affirm the circuit court.

### A. Facts

¶ 6. The Caspers filed suit against National Union as an insurer of one of Wearing's co-employers, TLC. The Caspers served National Union with an authenticated copy of the Fifth Amended Summons and Complaint, on May 5, 2006. On June 20, 2006, after National Union failed to answer the complaint by the deadline imposed by WIS. STAT. § 802.06(1),[2] the Caspers moved for default judgment against National Union. On June 26, 2006, National Union filed its answer, albeit untimely, and moved to enlarge time for filing the answer.

¶ 7. In its motion to enlarge time, National Union alleged that the Fifth Amended Complaint was received by Lynn Weisinger, a division counsel in the Claims Litigation Unit of National Union's parent company, AIG, located in Jersey City, New Jersey. AIG's Claims Litigation Unit is responsible for coordinating and administering all legal documents served domestically on authorized agents of AIG's member insurance com-

---

[2] WISCONSIN STAT. § 802.06(1) states, in pertinent part, that "[i]f a defendant in the action is an insurance company . . . the periods of time to serve a reply or answer shall be 45 days."

panies, including National Union. Upon receiving the complaint, Weisinger followed specific procedures to administer and coordinate the handling of these legal documents. After reviewing the complaint, Weisinger determined that it should be handled by Charles Lanphear in Atlanta, Georgia, a claims specialist handling truck liability. Weisinger sent the complaint by U.S. Mail to Lanphear on May 16, 2006, more than thirty days before the answer was due. Lanphear never received the complaint. Consequently, because he had no knowledge that National Union had been added to the lawsuit, Lanphear did not arrange for an answer to be filed on National Union's behalf.

¶ 8. The circuit court found that National Union's failure to file its answer in a timely manner was excusable neglect under WIS. STAT. § 801.15(2)(a) and subsequently granted National Union's motion to enlarge time and denied the Caspers' motion for default judgment.

¶ 9. After the circuit court granted National Union's motion to enlarge time to answer, National Union filed a motion for summary judgment with respect to the Caspers' WIS. STAT. § 632.24 claims, commonly referred to as direct action claims. Following briefing on the motion, the circuit court granted National Union's motion for summary judgment and dismissed the direct action claims.

¶ 10. The Caspers now appeal both the circuit court's order granting National Union's motion to enlarge time and denying their motion for default judgment, and the circuit court's order dismissing the direct action claims against National Union. We will address each in turn.

## B. "Excusable Neglect"

¶ 11. The Caspers first challenge the circuit court's order granting National Union's motion to enlarge time and denying the Caspers' motion for default judgment. The Caspers allege that the circuit court erred as a matter of law when it found that National Union's failure to answer the complaint in a timely fashion was due to excusable neglect. In response, National Union contends that the circuit court acted within its discretion. We affirm.

¶ 12. On review, we will not disturb the circuit court's decision to enlarge the time for filing an answer and to deny default judgment unless the circuit court erroneously exercised its discretion. *Sentry Ins. v. Royal Ins. Co.*, 196 Wis. 2d 907, 914, 539 N.W.2d 911 (Ct. App. 1995). We must affirm the circuit court's decision so long as it "represents a proper application of the law and is a determination that a reasonable judge could have reached." *Id.* We do not test the circuit court's discretionary decision "by our sense of what might be a 'right' or 'wrong' decision in the case. Rather, the [circuit court's] determination will stand 'unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion.'" *Olivarez v. Unitrin Prop. & Cas. Ins. Co.*, 2006 WI App 189, ¶ 16, 296 Wis. 2d 337, 723 N.W.2d 131 (citation omitted).

¶ 13. In conducting our review of the circuit court's decision to grant National Union's motion to enlarge time and to deny the Caspers' motion for default judgment, "we must examine the circuit court's

on-the-record explanation of the reasons underlying its decision." *See id.*, ¶ 17. The circuit court's "[r]easons must be stated, but 'need not be exhaustive.' " *See id.* (citation omitted). And "[b]ecause the exercise of discretion is so essential to a circuit court's functioning, we will search the record for reasons to sustain its exercise of discretion." *See id.* (citation omitted). As long as the circuit court properly applied the law and reached a determination that a reasonable judge could have reached, we must affirm the decision on appeal even if the decision is one that would not have been made by the members of this court. *See Sentry Ins.*, 196 Wis. 2d at 914.

¶ 14. When determining whether to grant National Union's motion to enlarge time, the circuit court needed to consider: (1) whether National Union's "noncompliance was due to excusable neglect," and (2) whether "an enlargement of time would serve the interests of justice; that is, whether the party seeking relief acted in good faith and whether the opposing party would be prejudiced by the time delay." *See id.* at 915.

¶ 15. "Excusable neglect is not synonymous with neglect, carelessness or inattentiveness. Rather, excusable neglect is that neglect which might have been the act of a reasonably prudent person under the circumstances." *Id.* (citation omitted). When considering the "interests of justice," the circuit court "must be cognizant that denial of a motion for enlargement of time to answer may result in a default judgment in favor of the plaintiff" and that the "law views default judgments with disfavor." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 469, 326 N.W.2d 727 (1982). "On the other hand,

the circuit court should also be aware of the party's and society's interest in prompt adjudication and 'the probability that a policy which excused or tolerated a lawyer's neglect would foster delay in litigation' and lower the quality of legal representation." *Id.* (citation omitted). So long as the circuit court properly applied this law and reached a decision a reasonable judge could reach, we cannot reverse its decision.

¶ 16. When denying the Caspers' motion for default judgment and granting National Union's motion to enlarge time, the circuit court held as follows:

> I'm denying the motion, default judgment, and granting the motion to enlarge time to answer. I believe that the affidavits of this Mr. Lanphear and Miss Weisinger . . . establish excusable neglect in failure to timely answer and a [sic] good faith and prompt efforts to rectify the oversight when it was discovered.
>
> It appears that despite the carefully structured process to assure timely answers to the legal process that timely answers to the legal process were filed, and they have a process that attempts to assure timely answer to the legal process most likely based upon the affidavit; it appears that correspondence was lost and that resulted in a less than timely answer. Under [*Sentry Insurance*, 196 Wis. 2d 907,] I certainly believe that this constitutes excusable neglect.
>
> I'll also note in passing as everybody knows that the law disfavors default judgment and strongly presumes that parties should be given their opportunity to litigate the merits of the case. I don't see a significant bias or prejudice to the Caspers.
>
> I do note that we're dealing with a fifth amended complaint . . . .

But on the basis of the rationale that I put forth first I'm granting their motion to enlarge time to answer and denying the motion for default judgment.

¶ 17. The Caspers take issue with the circuit court's finding that National Union's behavior constituted excusable neglect. In particular, the Caspers argue that the circuit court erred in finding that *Sentry Insurance* governs the facts of this case. In *Sentry Insurance*, we upheld the circuit court's finding of excusable neglect after the defendant, an insurance company, alleged that it failed to timely answer a complaint because it inadvertently attached the summons and complaint to the pre-suit file and sent the pre-suit file off for duplication. *Id.*, 196 Wis. 2d at 915–16. It was not until the file was returned that the defendant discovered its error and filed an answer. *Id.* at 915. We held that the circuit court acted within its discretion when it held that a "reasonably prudent person under the same circumstances could have made the same acts that caused the delay to file the answer, and therefore the mistakes were excusable neglect." *Id.* We explicitly noted that "[w]hile clerical error is not always excusable, a clerk's misrouting is not as a matter of law inexcusable neglect." *Id.*

¶ 18. The Caspers would have the circuit court instead apply *Mohns, Inc. v. TCF National Bank*, 2006 WI App 65, 292 Wis. 2d 243, 714 N.W.2d 245, asserting that *Mohns* states that allegations that the summons and complaint were "lost in transit" can never constitute excusable neglect. *Mohns* does not stand for such a proposition.

¶ 19. Certainly, the Caspers correctly state that we reversed the circuit court's finding in *Mohns* that the defendant's failure to file a timely answer was excusable neglect when the defendant alleged that the

summons and complaint were "lost in transit" after the defendant's legal department changed addresses. *See id.*, ¶ 12. We did not reverse, however, based upon the factual basis of the defendant's excuse. Instead, we reversed the circuit court's holding because rather than considering whether the defendant's behavior leading up to its failure to answer was the act of a reasonably prudent person, the circuit court looked solely at the defendant's behavior upon discovering its oversight. *See id.*, ¶¶ 11–12. We held that "what the lawyers did after [the defendant's] default is . . . largely immaterial." *Id.*, ¶ 11. Instead, "[t]he circuit court must consider later 'prompt action combined with the reasons advanced by the dilatory party for the omission.' " *Id.* (citation omitted). We fail to find that the circuit court made the same misstep here.

¶ 20. Unlike the circuit court in *Mohns*, which never considered why the defendant failed to promptly file its answer, the circuit court here looked to the procedures that National Union had in place to avoid these types of mishaps. The circuit court explicitly noted that National Union had in place a "carefully structured process to assure timely answers," but that despite that process "it appears that correspondence was lost." In so noting, the circuit court implicitly determined the oversight was one that could be attributed to a "reasonably prudent person" and determined that the oversight in this instance was akin to the clerical error found to be excusable neglect in *Sentry Insurance*.

¶ 21. The circuit court also properly took into consideration how an enlargement of time or a default judgment would "serve the interests of justice," citing National Union's "good faith and prompt efforts to rectify the oversight when it was discovered." *See*

*Sentry Ins.*, 196 Wis. 2d at 915. Further, the court noted that because the answer was filed only two days after its due date, that the Caspers were not significantly "bias[ed] or prejudice[d]" by the delay.

¶ 22. Accordingly, we find this case to be more like *Sentry Insurance* than *Mohns* and do not find that the circuit court erred in exercising its discretion when it granted National Union's motion to enlarge time and correspondingly denied the Caspers' motion for default judgment.

 *C. Wisconsin's Direct Action Statute, WIS. STAT. § 632.24*

¶ 23. The Caspers next appeal the circuit court's decision to grant National Union's summary judgment motion, dismissing the Caspers' WIS. STAT. § 632.24 claims, commonly referred to as direct action claims. The Caspers contend that the circuit court erroneously held that the direct action statute did not apply to the insurance policy between National Union and TLC because the policy was not delivered or issued for delivery in Wisconsin. National Union alleges that the circuit court properly interpreted the law and granted National Union's motion for summary judgment. We affirm.

¶ 24. Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984). In an appeal from a grant of summary judgment, our review is *de novo*, applying the same methodology as the circuit court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987).

¶ 25. WISCONSIN STAT. § 632.24[3] allows a party to assert a negligence claim directly against an insurance company, in certain instances, irrespective of whether the insured has yet been found liable by a final judgment. The right to maintain a direct action claim under § 632.24 is limited by the restrictions set forth in WIS. STAT. § 631.01(1). *See* Arnold P. Anderson, WISCONSIN INSURANCE LAW § 11.105 (5th ed. 2004). Section 631.01(1) states, in pertinent part:

---

[3] A direct action is brought under a statutory scheme including both a substantive and procedural component. Arnold P. Anderson, WISCONSIN INSURANCE LAW § 11.105 (5th ed. 2004). The substantive portion is included in WIS. STAT. § 632.24 and provides:

> **Direct action against insurer.** Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

The procedural portion is included in WIS. STAT. § 803.04(2)(a) and provides:

> **Permissive joinder of parties.** . . .
>
> **(2)** NEGLIGENCE ACTIONS: INSURERS. (a) In any action for damages caused by negligence, any insurer which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the prosecution, defense or settlement of the claim or action, or which by its policy agrees to prosecute or defend the action brought by plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action or agrees to pay the costs of such litigation, is by this section made a proper party defendant in any action brought by plaintiff in this state on account of any claim against the insured. If the policy of insurance was issued or delivered outside this state, the insurer is by this paragraph made a proper party defendant only if the accident, injury or negligence occurred in this state.

**Application of statutes. (1)** GENERAL. This chapter and ch. 632 apply to all insurance policies and group certificates *delivered or issued for delivery in this state, on property ordinarily located in this state, on persons residing in this state when the policy or group certificate is issued, or on business operations in this state* ....

(Emphasis added.)

¶ 26. The Caspers contend that under the plain language of WIS. STAT. §§ 632.24 and 631.01(1) they can bring a direct action suit against National Union because it insured TLC's business operations in this state. The Caspers argue that under the plain language of § 631.01(1), the direct action statute applies to polices: (1) delivered or issued for delivery in this state; (2) on property ordinarily located in this state; (3) on persons residing in this state when the policy or group certificate is issued; *or* (4) on business operations in this state. Accordingly, based on their interpretation of the statute's plain language, the Caspers contend that the circuit court erred in holding that § 631.01(1) requires that a policy be "delivered or issued for delivery in this state," when a policy could also implicate the statute by satisfying any of the other three conditions.

¶ 27. National Union counters that the circuit court properly applied the law when it dismissed the Caspers' direct action claims because in *Kenison v. Wellington Insurance Co.*, 218 Wis. 2d 700, 582 N.W.2d 69 (Ct. App. 1998), this court already determined that the plain language of WIS. STAT. § 631.01(1) requires that a policy be "delivered or issued for delivery in this state." *See Kenison*, 218 Wis. 2d at 710.

¶ 28. In *Kenison*, we addressed exactly the issue raised in this case and concluded that "the unambiguous language of [WIS. STAT. § 631.01(1)] limits the application of [WIS. STAT. § 632.24] to insurance policies

delivered or issued for delivery in [Wisconsin]." *See Kenison*, 218 Wis. 2d at 710. The Caspers' contention that the statute should be interpreted differently is in direct conflict with our prior case law. Even if we agreed with the Caspers, we are without the authority to modify, withdraw, or otherwise change our prior case law. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

¶ 29. Accordingly, the circuit court properly relied upon *Kenison* for the proposition that the policy must be issued or delivered in Wisconsin before the Caspers could avail themselves of Wisconsin's direct action statute. Consequently, because it remains undisputed that the policy at issue was not issued or delivered in Wisconsin, we affirm the circuit court.

## II. Ryder/ORIC Appeal

¶ 30. Ryder and its insurer, ORIC, appeal the circuit court's decision denying their motion for summary judgment.[4] They argue that the circuit court erred in holding that: (1) the MCS-90 endorsement in the Ryder-ORIC policy applies and allows the Caspers to collect from ORIC a judgment rendered against Wearing for negligence; and (2) material issues of fact exist as to which Wisconsin financial responsibility statute applies, Wis. Stat. §§ 344.51 or 344.52. Ryder and ORIC further contend that, although the circuit court did not address the issue, presumably because the court found that the MCS-90 endorsement allowed the Caspers to collect a judgment from ORIC, the Wisconsin

---

[4] As previously noted, we review a circuit's decision on summary judgment *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987).

omnibus statute, WIS. STAT. § 632.32, does not make the Caspers an insured under the Ryder-ORIC policy.[5] We reverse.

## A. Facts

¶ 31. At the time of the accident, Ryder owned the truck driven by Wearing. Ryder leased the truck to Bestway, Wearing's employer, under a commercial lease. Per the lease agreement, Bestway was to obtain liability insurance to cover the truck and to name Ryder as an additional insured on that policy. Bestway complied, obtaining an insurance policy from American International South Insurance Company ("AIS") with a $1,000,000 coverage limit. The Bestway-AIS policy also contains an MCS-90 endorsement, which satisfies federal regulations by verifying that Bestway can pay a final judgment recovered against it for up to $750,000.

¶ 32. Ryder was also the named insured on its own insurance policy, issued by ORIC. Ryder is the only named insured on that policy. The Ryder-ORIC policy explicitly states that it does *not* provide coverage to lessees of Ryder-owned vehicles (i.e., Bestway) unless the lessee specifically elects such coverage through its lease agreement with Ryder. The lease agreement between Ryder and Bestway contains no such election, and in fact, requires Bestway, and not Ryder, to obtain liability coverage. The Ryder-ORIC policy also contains an MCS-90 endorsement.

¶ 33. The Caspers filed suit against Ryder and ORIC, alleging that Ryder and ORIC are liable for

---

[5] Ryder and ORIC also dedicate a portion of their brief to asking us to uphold the circuit court's dismissal of the common law negligence claims against them. Because the Caspers do not appeal the circuit court's decision in that regard, we decline to address the issue.

Wearing's negligence. Ryder and ORIC filed for summary judgment, contesting four potential avenues for their liability: (1) the common law; (2) the MCS-90 endorsement included in Ryder's insurance policy issued by ORIC; (3) the Wisconsin omnibus statute, WIS. STAT. § 632.32; and (4) the Wisconsin financial responsibility statutes, WIS. STAT. §§ 344.51 or 344.52. The circuit court held as follows: (1) that the Caspers had conceded that no common law claim could be maintained against Ryder and ORIC; (2) that the MCS-90 endorsement in Ryder's insurance policy allows the Caspers to recover from ORIC a judgment against Wearing for negligence; and (3) that material issues of fact existed as to which financial responsibility statute applied, §§ 344.51 or 344.52. The circuit court did not address Ryder and ORIC's liability with respect to Wisconsin's omnibus statute, § 632.32, presumably because it found that the MSC-90 endorsement allows the Caspers to collect a judgment from ORIC. Ryder and ORIC appeal.

## B. The MCS-90 Endorsement

■

¶ 34. ORIC first argues that the circuit court erred in holding that the MCS-90 endorsement in the Ryder-ORIC policy allows the Caspers to collect from ORIC a judgment rendered against Wearing for negligence.[6] The circuit court held that while other "endorsements in the policy clearly exclude coverage for Wear-

---

[6] We note at the outset that interpretation of the MCS-90 endorsement is a question of federal rather than state law. On federal questions, this court is bound only by the decisions of the United States Supreme Court. *See Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 307, 340 N.W.2d 704 (1983).

ing . . . the MCS[-]90 [endorsement] renders ineffectual those exclusions and, by operation of law, qualifies Wearing as an insured under the [ORIC] policy." We reverse.

¶ 35. The Motor Carrier Act of 1980, 49 U.S.C. § 10101 *et seq.,* and the subsequent regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA"), require certain interstate motor carriers to obtain liability insurance, guaranteeing their financial responsibility for the motor carriers' negligent acts up to the amount prescribed by statute.[7] The legislation was, in part, intended to address " 'abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce.' " *Carolina Cas. Ins. Co. v. Yeates,* 584 F.3d 868, 873 (10th Cir. 2009) (en banc) (citations omitted).

¶ 36. The law further requires proof of such insurance, consisting of either: (1) an MCS-90 endorsement issued by an insurer; (2) an MCS-82 bond issued by a surety; or (3) a written decision, order, or authorization of the FMCSA authorizing a motor carrier to self-insure. *See* 49 C.F.R. § 387.7(a), (d) (2009). In this case, both Ryder and Bestway elected to utilize the MCS-90 endorsement provided in the regulations. The

The value of the opinions of federal courts of appeals and district courts is limited to their persuasiveness. *See id.*

[7] More specifically, a "for-hire" motor carrier hauling non-hazardous property in interstate or foreign commerce, with a gross vehicle weight of 10,001 or more pounds, must obtain a $750,000 policy. *See* 49 C.F.R. § 387.9(1) (2009).

The parties agree that $750,000 is the statutory minimum applicable in this case.

MCS-90 endorsement attaches to a motor carrier's liability policy and explicitly states that "[i]t is understood and agreed that no condition, provision, stipulation, or limitation . . . shall relieve the company from liability or from the payment of any final judgment." Yet, the endorsement also states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." *See* 49 C.F.R. § 387.15, Illustration I (2009).

¶ 37. The Ryder-ORIC policy explicitly excludes from coverage "lessee/renter [Bestway and], his agents or employee [Wearing]," "[u]nless the lease/rental agreement states in writing that such lessee/renter is to be provided with automobile liability insurance."[8] The lease between Ryder and Bestway provides no such requirement. To the contrary, the lease executed between Ryder and Bestway requires Bestway, not Ryder, to maintain a liability policy for at least $1,000,000.

---

[8] The policy's exclusion for lessees and renters is included in "Endorsement C-7," entitled "Driverless Autos." On appeal, the Caspers argue that Ryder and ORIC "failed to make any argument regarding [the] C-7 endorsement on the summary judgment motion," and therefore, they argue that Ryder and ORIC have waived their right to raise the language on appeal. *See State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court."). While we agree with the Caspers that issues not raised before the circuit court are waived, we disagree on whether this particular issue was raised below. In their brief before the circuit court, Ryder and ORIC not only cite to Endorsement C-7, but they include the endorsement's language in its entirety in their brief and state that Endorsement C-7 "preclude[s] any coverage for this loss under the [Ryder-ORIC] policy." Therefore, the argument was not waived.

¶ 38. The Caspers contend, and the circuit court agreed, that the MCS-90 endorsement included in the Ryder-ORIC policy overrides the exclusion for lessees. In so holding, the circuit court relied exclusively on *Lynch v. Yob*, 768 N.E.2d 1158 (Ohio 2002), which held that "MCS-90 endorsement[s] should be read to eliminate *any* limiting clauses in the underlying policy restricting the scope of coverage." *See id.* at 1163. We decline to follow the Ohio Supreme Court's holding in *Lynch*.

¶ 39. In *Lynch*, the Ohio Supreme Court, purportedly relying on the Ninth Circuit Court of Appeals' decision in *John Deere Ins. Co. v. Nueva*, 229 F.3d 853, 859 (9th Cir. 2000), and the Tenth Circuit Court of Appeals' decision in *Adams v. Royal Indem. Co.*, 99 F.3d 964, 971 (10th Cir. 1996), allowed a plaintiff to recover from two insurance companies even though recovery from the first company exceeded the federal statutory minimum and the second company's policy did not cover the accident at issue. *Lynch*, 768 N.E.2d at 1162–63. The plaintiff in *Lynch*, who was injured in a tractor-trailer accident, recovered $1,000,000 from the tractor's insurer under the terms of the tractor's insurance policy. *Id.* at 1159. The Ohio Supreme Court then allowed the plaintiff to recover additional monies against the trailer's insurer even though the driver of the tractor was not covered under the trailer's insurance policy. *See id.* at 1159–60, 1165. The court held that the attachment of the MCS-90 endorsement to the trailer's policy negated any limiting clauses in the underlying policy. *See id.* at 1163.

¶ 40. By allowing the plaintiff to recover against two insurers, even though the first insurer satisfied the minimum requirements of the federal statutory scheme, the Ohio Supreme Court expanded the hold-

ings in *John Deere* and *Royal* beyond their scope and contravened the purpose of the Motor Carrier Act. *See John Deere*, 229 F.3d at 854, 860 (allowing recovery from the insurer of the trailer in a tractor-trailer accident, even though the policy did not cover the accident, because the policy included an MCS-90 endorsement and no other party involved was insured); *Royal*, 99 F.3d at 965, 971 (same). In neither *John Deere* nor *Royal* did a court allow a party to recover against a second insurance company when the federal minimum for recovery was already satisfied, as *Lynch* reads the cases to allow. *See Lynch*, 768 N.E.2d 1158. To allow recovery in that instance obligates insurers beyond what the law requires and beyond the negotiated terms of the policy between the insurer and the insured. We find the better reasoned rule to be the one articulated in *Yeates*, and we adopt that rule here. *See Yeates*, 584 F.3d at 871.

¶ 41. In *Yeates*, addressing a factual scenario similar to our own, the Tenth Circuit Court of Appeals, sitting en banc, held that:

> the MCS-90 endorsement only applies where: (1) the underlying insurance policy to which the endorsement is attached does not provide coverage for the motor carrier's accident, *and* (2) the motor carrier's insurance coverage is either not sufficient to satisfy the federally-prescribed minimum levels of financial responsibility or is non-existent.

*Id.*; *see also Kline v. Gulf Ins. Co.*, 466 F.3d 450, 455–56 (6th Cir. 2006); *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 470–71 (5th Cir. 2005). The rule imparted from *Yeates* stays true to the " 'purpose of the [MCS-90] endorsement . . . to give full security for the protection

of the public *up to the limits prescribed." See Kline*, 466 F.3d at 455 (citation omitted; brackets and emphasis in *Kline*).

¶ 42.　Critically, the rule in *Yeates* also stays faithful to the express language in the MCS-90 endorsement, which states that "all terms, conditions, and limitations in the policy to which the [MCS-90] endorsement is attached shall remain in full force and effect as binding between the insured and the company." *See* 49 C.F.R. § 387.15, Illustration I. Thereby, the MCS-90 endorsement's language, while protecting the public, does not fundamentally alter the terms agreed upon and bargained for between the insured and the insurer. The MCS-90 endorsement cannot reasonably be read to alter the terms agreed upon by the parties to the insurance policy when the minimum level of financial responsibility to the public has already been met.

¶ 43.　The holding in *Yeates* also makes sense in light of the fact that the MCS-90 endorsement requires the insured "to reimburse the [insurance] company for any payment . . . that the [insurance] company would not have been obligated to make under the provisions of the policy except for the agreement contained in [the MCS-90] endorsement." *See* 49 C.F.R. § 387.15, Illustration I. The inclusion of the reimbursement provision in the MCS-90 endorsement creates a suretyship, obligating an insurance company to cover a judgment for liability "not in the motor carrier's stead, but to ensure a minimum level of satisfaction of a public liability judgment." *Yeates*, 584 F.3d at 881. "To accomplish the MCS-90's suretyship purpose, the endorsement—when triggered—reads out 'only those clauses in the policy that would limit the ability of a third party victim to recover for his loss.' " *Id.* at 883 (citations omitted). In

110

so doing, the MCS-90 endorsement acts to shift the risk stemming from motor carrier vehicle accidents from the public to the insurer, all the while continuing to hold only the motor carrier liable for its own negligent acts up to the mandatory minimum.

¶ 44. Applying the rule set forth in *Yeates* and adopted by this court, the Caspers cannot recover a judgment against Wearing from ORIC based on the inclusion of the MCS-90 endorsement in the Ryder-ORIC policy because: (1) the Ryder-ORIC policy does not provide coverage for the accident; and (2) Bestway's policy through AIS provides coverage for the accident in excess of the amount required by the federal regulatory scheme. Accordingly, the decision of the circuit court is reversed, and this issue is remanded to the circuit court for dismissal.

 *C. Wisconsin's Omnibus Statute, Wis. Stat. § 632.32*

¶ 45. In their response to Ryder and ORIC's motion for summary judgment before the circuit court, the Caspers argued that if the court were to find that the MCS-90 endorsement did not allow the Caspers to recover a judgment from ORIC, that Wisconsin's omnibus statute, Wis. Stat. § 632.32(3)(a), would allow such a recovery. The circuit court did not address the issue, presumably because it found that the Caspers could recover against ORIC in the first instance. Because the question is purely one of law and the parties addressed the issue before the circuit court and in their respective briefs before this court, we decide the issue now in the interest of judicial economy. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980).

¶ 46. The Caspers do not assert that the plain terms of the Ryder-ORIC policy provide coverage for

Bestway and Wearing, but rather they argue that excluding Bestway and Wearing from coverage violates Wisconsin's omnibus statute. *See* Wis. Stat. § 632.32(3)(a). The Wisconsin omnibus statute mandates that motor vehicle liability insurance policies issued or delivered in Wisconsin[9] must provide "any person using any motor vehicle described in the policy," who is using the vehicle "for purposes and in the manner described in the policy," the same "[c]overage provided to the named insured." Section 632.32(1), (3)(a). When a policy is inconsistent with the omnibus statute it must be reformed to comply. Wis. Stat. § 631.15(4). The Caspers argue that Wearing was a permissive driver under the omnibus statute, and, therefore, the policy must be reformed to afford Wearing the same coverage Ryder would have received under the policy.

¶ 47. Ryder and ORIC counter that the claim falls within a statutory exception to the omnibus statute, which states:

> If the policy is issued to a motor vehicle handler, it may restrict coverage afforded to anyone other than the motor vehicle handler or its officers, agents or employees to the limits under [Wis. Stat. §] 344.01(2)(d) and to instances when there is no other valid and collectible insurance with at least those limits whether the other insurance is primary, excess or contingent.

*See* Wis. Stat. § 632.32(5)(c). Ryder and ORIC contend that under the plain terms of the statutory exception, the Ryder-ORIC policy excluded coverage for Bestway and Wearing. We agree.

---

[9] For purposes of this appeal, we assume that the policy was "issued or delivered in Wisconsin" because the parties do not argue otherwise.

¶ 48. "[O]ne purpose of the omnibus coverage requirement is to afford the additional insured the same protection as is afforded to the named insured." *Carrell v. Wolken*, 173 Wis. 2d 426, 437, 496 N.W.2d 651 (Ct. App. 1992). Noting that purpose, we presume that additional insureds may avail themselves of a policy unless: (1) the statute allows a restriction, like the exception set forth in Wis. Stat. § 632.32(5)(c); and (2) the policy takes advantage of the exception by explicitly stating how the additional insured is to be restricted. *Id.* In order to take advantage of the exception set forth in § 632.32(5)(c), a motor vehicle handler must "either insert language in the policy that: (1) permissive users are restricted to the minimum statutory liability limits; or (2) the users cannot avail themselves of the policy unless there is no other valid collectible insurance whether primary, excess or contingent." *Henry v. General Cas. Co.*, 225 Wis. 2d 849, 866, 593 N.W.2d 913 (Ct. App. 1999).

¶ 49. The Ryder-ORIC policy contains the language necessary to invoke the exception to the omnibus statute in "Endorsement C-15." Endorsement C-15 states as follows:

### OTHER VALID AND COLLECTIBLE INSURANCE

Except in those contracts whereby the Named Insured [Ryder] has agreed to extend insurance provided under this Policy on a direct, primary basis to or on behalf of its customers, the following shall apply:

It is agreed that *this Policy shall exclude coverage for any occurrence for which other valid and collectible*

> *insurance (either on a primary or an excess basis) is available to cover such occurrence* (including the interest of the Named Insured), equal to the coverage and limits of this Policy.
>
> Further it is agreed that should other valid and collectible insurance be available with coverages and limits less than the coverages and limits provided by this Policy, then this Policy shall cover, but only for the difference between the coverages and limits provided by such other Policy and the coverages and limits provided by this Policy but only for the liability of the Named Insured.

(Emphasis added.) The emphasized language almost exactly parallels the language required by case law to take advantage of the statutory exception to the omnibus statute—"the users cannot avail themselves of the policy unless there is no other valid collectible insurance whether primary, excess or contingent." *See Henry*, 225 Wis. 2d at 866. Therefore, we find that the exception applies, and the omnibus statute does not act to make Bestway and Wearing insureds under the terms of the Ryder-ORIC policy.

### D. *Wisconsin's Financial Responsibility Statutes, Wis. Stat. §§ 344.51 and 344.52*

¶ 50. Finally, ORIC and Ryder claim that the circuit court erred in finding that a material issue of fact existed as to which Wisconsin financial responsibility statute applies to the case—Wis. Stat. §§ 344.51 or 344.52. They argue that because the lease agreement between the parties was executed outside of Wisconsin, the foreign financial responsibility statute, § 344.52, applies. The Caspers ask us to uphold the circuit court's finding that a question of material fact exists, but

114

contend that, even if the circuit court erred in that respect, because the contract was performed in Wisconsin, the domestic financial responsibility statute, § 344.51, applies. We reverse and apply the foreign financial responsibility statute.

¶ 51. Contrary to the circuit court's cursory finding, the facts material to deciphering which Wisconsin financial responsibility statute applies do not appear to be in dispute. In March 1997, Bestway and Ryder executed the Truck Lease and Service Agreement, whereby Bestway leased a number of trucks from Ryder. The lease agreement lists Bestway's address as Independence, Ohio, and Ryder's as Indianapolis, Indiana, and indicates that the leased vehicles were domiciled in Cincinnati, Ohio. In October 2001, the parties signed an amendment to the lease agreement which modified the rates Bestway would be charged, but did not modify the location at which the vehicles were domiciled. Sometime after the original lease was executed, however, the vehicles were no longer domiciled in Ohio. At the time of the accident, the parties agree that the vehicles were located in Wisconsin.

¶ 52. Having established the material facts, the question before this court is which Wisconsin statute the facts implicate—the domestic financial responsibility statute (Wis. Stat. § 344.51) or the foreign financial responsibility statute (Wis. Stat. § 344.52). "We give statutory language its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning." *Donaldson v. Town of Spring Valley*, 2008 WI App 61, ¶ 6, 311 Wis. 2d 223, 750 N.W.2d 506. "We must construe a statute in the context in which it is used, not in isolation but as part of a

115

whole, in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results." *Id.*

¶ 53. Wisconsin Stat. § 344.51, entitled, "**Financial responsibility for domestic rented or leased vehicles**," requires that lessors renting vehicles in Wisconsin, *see American Family Mutual Insurance Co. v. Reciprocal Insurance Service Exchange Management Co.*, 111 Wis. 2d 308, 311, 330 N.W.2d 223 (Ct. App. 1983), "file a bond or insurance policy with the Department of Transportation. Such bond or policy must provide that the issuing company will be liable in certain statutory amounts for damages caused by the negligent use of the lessor's automobiles," *Germanotta*, 119 Wis. 2d at 295.[10] A lessor who fails to file a bond or policy with the Department of Transportation will still be found liable for damages caused by the negligent operation of the vehicle up to the statutory amount. Wis. Stat. § 344.51(2).

¶ 54. Wisconsin Stat. § 344.52, entitled "**Financial responsibility for foreign rented vehicles**," provides that

> **(1r)** Whenever any motor vehicle rented for compensation outside this state is operated in this state, the lessor of the motor vehicle is directly liable for all damages to persons or property caused by the negligent operation of the rented vehicle *unless,* at the time when the damage or injury occurs, the operation of the rented vehicle is effectively covered by a policy of insurance

---

[10] Statutory limits are defined by Wis. Stat. § 344.01(2)(d): "$25,000 because of bodily injury to or death of one person in any one accident and . . . $50,000 because of bodily injury to or death of 2 or more persons in any one accident and in the amount $10,000 because of injury to or destruction of property of others in any one accident."

that provides coverage at least in the amounts specified in [Wis. Stat. §] 344.01(2)(d) . . . .

(Emphasis added.) In other words, unlike the domestic financial responsibility statute, the foreign financial responsibility statute does not require a lessor to file a bond or insurance policy with the Department of Transportation, but instead simply requires that some insurance policy provide coverage up to the statutorily required amount. In the event that no such policy exists, the lessor will be held directly liable for damages caused by the negligent operation of the vehicle up to the statutory amount. *See* § 344.52.

¶ 55. Neither the statutes themselves nor previous case law define domestic and foreign in relation to the financial responsibility statutes. However, we conclude that the foreign financial responsibility statute applies to the set of facts before us.

¶ 56. By the plain language of the statutes, it is not "performance" that determines which statute applies, as the Caspers contend. The foreign financial responsibility statute explicitly covers "any motor vehicle rented outside this state" but "*operated in this state.*" *See* Wis. Stat. § 344.52(1r) (emphasis added). Accordingly, it is irrelevant to our analysis that the truck was maintained and operated in Wisconsin because both statutes contemplate that possibility.

¶ 57. Having ruled out performance as the determining factor, we turn to the remaining facts, all of which point toward the application of the foreign financial responsibility statute: Bestway listed its address as Independence, Ohio; Ryder listed its address as Indianapolis, Indiana; and the leased vehicles were listed in the lease as being domiciled in Cincinnati, Ohio. Because all of the parties are outside of the state,

and performance of the contract does not determine which statute to apply, we find the foreign financial responsibility statute, WIS. STAT. § 344.52, applies to the set of facts before us.

¶ 58. Applying WIS. STAT. § 344.52, we find that Ryder and ORIC are not liable for the accident in question. The statute does not hold a lessor, i.e. Ryder, liable for damages caused by the negligent operation of the rented vehicle if at the time when the damage occurs, the operation of the rented vehicle is effectively covered by a policy of insurance that provides coverage at the amounts specified by WIS. STAT. § 344.01(2)(d)— "$25,000 because of bodily injury to or death of one person in any one accident and . . . $50,000 because of bodily injury to or death of 2 or more persons in any one accident and in the amount $10,000 because of injury to or destruction of property of others in any one accident." As we have previously noted, the lease agreement between Ryder and Bestway required Bestway to obtain liability insurance for $1,000,000, well in excess of Wisconsin's statutory minimum. Because Bestway did in fact maintain that insurance policy at the time of the accident, neither Ryder nor ORIC (as the insurer) is liable for the accident under Wisconsin's foreign financial responsibility statute.

¶ 59. In so finding, we reject the Caspers' contention that in 1994 when Ryder filed a Form E "Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance" with the Department of Transportation, Ryder was certifying that its policy with ORIC covered the truck driven by Wearing or that Ryder was implicitly acknowledging that the domestic financial responsibility statute applies in this case.

118

Form E certainly states that Ryder is insured by ORIC. However, Form E was filed with the Wisconsin DOT in 1994, years before Ryder and Bestway executed their lease agreement, and the form does not mention the particular vehicle at issue in this case. While Form E may be proof that some Ryder trucks in 1994 were subject to Wisconsin's domestic financial responsibility statute, it is not proof that the particular truck at issue in this case is implicated by the statute.

¶ 60. Because we find that none of the avenues of relief raised create liability on behalf of Ryder and ORIC, we remand this case to the circuit court for dismissal of the Caspers' claims in that regard.

## III. Wenham's Appeal

¶ 61. Jeffrey Wenham, the Bestway CEO, appeals from the circuit court's order on motion for reconsideration, which reinstated the Caspers' claim that Wenham is personally liable in negligence for approving the route that Wearing was driving the day of the accident, knowing that the route could not be safely completed pursuant to federal regulations. Originally, the circuit court granted Wenham's motion for summary judgment, dismissing all of the Caspers' claims against Wenham as an individual. The Caspers filed a motion to reconsider, and the circuit court reinstated the negligence claim against Wenham, agreeing with the Caspers that it had erred in finding that there was no evidence or testimony that Wenham personally approved the route.

¶ 62. Wenham appeals, asserting that the circuit court erred in finding that a corporate officer can be held personally liable for non-intentional conduct and that a material issue of fact exists as to whether Wenham approved the route. We affirm the circuit court.

119

## A. Facts

¶ 63. Bestway operated a fleet of trucks for Applied Industrial Technologies, Inc. ("AIT"), for whom Wearing was making a delivery at the time of the accident. Wenham, as well as being the CEO, was also the primary salesman involved with the AIT account. Starting in 2001, AIT was putting financial pressure on Bestway to reduce rates but not services.

¶ 64. The route Wearing was driving the day of the accident was 536 miles long and took Wearing through Indiana, Illinois, and Wisconsin. Wearing began driving south from Milwaukee, Wisconsin, traveling through Chicago, Illinois to Hammond, Indiana. Once in Hammond, he returned north, driving back through Chicago and Milwaukee, and continuing up to Green Bay, Wisconsin. Once in Green Bay, Wearing again turned around, driving south, back to Milwaukee. He was on his last leg of the route (from Green Bay to Milwaukee), on his fifth consecutive day driving the route, when his truck collided with the Caspers' minivan. The route ran on both city streets and the freeways of each state.

¶ 65. Wenham testified that he did not personally approve the route; rather, all Bestway routes were created by Bestway employees, Lyle Marion or Doug Hoffman (after Marion retired), and were then approved by Bestway's safety department. Wenham was, however, familiar with federal regulations regarding routes in 2003 when the accident occurred.

¶ 66. Hoffman testified during his deposition that he formulated routes using the "Delorean Mapmaker," which details the route's actual miles and the actual speed limits on the route's roads. Hoffman testified that in 2003, Wearing was allowed actual driving time of ten

hours per day and fifteen hours of combined driving time and on-duty work time. Given those restrictions, Hoffman automatically ruled out any route over 600 miles. Hoffman also testified that all new routes were subject to Wenham's approval.

¶ 67. The Caspers' expert, Robert Coulter, testified that the 536–mile route could not be driven within the time limits permitted by the federal regulations based on the average speed of a truck on the freeway and on city roads. More specifically, Coulter testified that in order to complete a 536–mile route in ten hours, a driver would have to average 53.6 miles per hour. He described that speed as "a physical impossibility" given the weight of the truck, the fact that the route continued through several metropolitan areas, and utilized both freeways and city roads.

¶ 68. At the time of the accident, Wearing had been driving the route in question for AIT for one-and-a-half to two years. Wearing testified that he had contacted Hoffman and told him that he couldn't possibly do the run within the applicable federal guidelines taking into account unloading and loading the truck. Hoffman told Wearing to mark the loading and unloading as off duty time, bringing Wearing within the ten-hour driving limit. Wearing was later cited for falsifying his books during the AIT route. Wenham was regularly notified when a driver was cited for falsifying a logbook or when other safety concerns arose.

*B. Negligence Claim Against Wenham Personally*

¶ 69. As an initial matter, the parties argue over whether Wenham appeals the circuit court's order on motion to reconsider, in which case we determine

whether the circuit court erroneously exercised its discretion, *see State v. White*, 2008 WI App 96, ¶ 9, 312 Wis. 2d 799, 754 N.W.2d 214, or whether Wenham appeals the circuit court's order on motion for summary judgment, in which case we review the circuit court's decision *de novo, see Green Spring Farms*, 136 Wis. 2d at 314–15. In the end, however, the distinction is without a difference, because we affirm the circuit court under either standard.

¶ 70. "It is basic to the Anglo-American law of torts that, absent a valid defense, one is liable for the harm proximately caused by his own negligent conduct." *Shannon v. City of Milwaukee*, 94 Wis. 2d 364, 369, 289 N.W.2d 564 (1980), *superseded on other grounds by statutory amendment to* WIS. STAT. § 345.05, *as recognized in Gonzalez v. Teskey*, 160 Wis. 2d 1, 8–10, 465 N.W.2d 525 (Ct. App. 1990). We have held that "[u]nder the doctrine of *respondeat superior* an employer can be held vicariously liable for the negligent acts of his employees while they are acting within the scope of their employment." *Id.* at 370. "The additional liability of the employer, however, does not shield the negligent employee from his own personal liability, nor does it supplant his liability with that of his employer." *Id.* "It provides only an alternative . . . source from which the injured party may recover . . . damages." *Id.* Such is the case here. To the extent that Wenham may have negligently approved the route in question, he cannot hide from his own personal liability because he is a corporate officer.

¶ 71. In reinstating the negligence claim against Wenham, the circuit court heavily relied on *Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis. 2d 683, 273 N.W.2d 285 (1979). Wenham argues at length that *Oxmans'*

does not control in this instance because in *Oxmans'* the court addressed the personal liability of a corporate officer for an alleged fraudulent misrepresentation, *see id.*, 86 Wis. 2d at 692, whereas here, the claim against the corporate officer lies in negligence. We agree with Wenham that *Oxmans'* is not controlling, but disagree that it therefore stands for the conclusion that Wenham asserts—that a corporate officer can never be held personally liable for non-intentional conduct. To the contrary, we find *Oxmans'* consistent with our holding that a corporate officer can be held personally liable for his negligent acts. *Oxmans'* states:

> We do not think it appropriate or required by the constitution that a corporate agent be shielded from personal jurisdiction if he, as agent of the corporation, commits a tortious act in the forum. . . .
>
> An individual is personally responsible for his own tortious conduct. A corporate agent cannot shield himself from personal liability for a tort he personally commits or participates in by hiding behind the corporate entity; if he is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his own responsibility.

*Id.* at 692–93. While *Oxmans'* may have been factually limited to fraudulent misrepresentation, the case language is not so limiting.

¶ 72. Having found that the circuit court properly determined that a claim for negligence against a corporate officer personally is permitted as a matter of law, we now must determine whether the circuit court erred in finding material questions of fact exist as to whether Wenham negligently approved the route in question.

123

¶ 73. "[N]egligence consists of failing to use that degree of ordinary care which would be exercised by 'the great mass of mankind' under the same or similar circumstances." *Rockweit v. Senecal*, 197 Wis. 2d 409, 424, 541 N.W.2d 742 (1995) (citation omitted). We agree with the circuit court that there is sufficient evidence on the record to create an issue of fact as to whether Wenham negligently approved the route. Wenham admits to being familiar with the federal regulations at issue, and there is testimony from Hoffman that Wenham approved the particular route in question. The Caspers' expert provides evidence that the route in question cannot realistically be completed within the time allotted by the federal regulations, and that Wenham may have been aware that Wearing was in fact not able to complete the route in the time allotted. That AIT was a large customer, pressuring Wenham to cut costs but not service, provides Wenham with the incentive to look the other way.

¶ 74. Because we find that a negligence claim against a corporate officer personally exists as a matter of law and that material questions of fact exist as to whether Wenham was in fact negligent, we affirm the ruling of the circuit court which reinstated the Caspers' claim.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.

¶ 75. FINE, J. (*concurring/dissenting*). Although I agree with the rest of the Majority's cogent opinion, I respectfully dissent from its affirmance of the circuit court's denial of the motion for default judgment filed against National Union Fire Insurance Company of Pittsburgh, P.A., by the Casper family.

¶ 76. Both the circuit court and the Majority seem to see this as a lost-in-transit situation where through no fault of National Union it could not respond timely to the complaint. This is not so; what the circuit court characterized as a "carefully structured process to assure timely answers," Majority op. ¶ 16, was simply and without excuse *not* followed.

¶ 77. National Union's "carefully structured process" required Charles Lanphear to tell Lynn Weisinger that he had received the complaint—the cover document was headed "**THE ATTACHED DOCUMENTS REQUIRE YOUR IMMEDIATE ATTENTION**" (bolding and uppercasing in original) and not only directed Lanphear to "acknowledge receipt of these documents" but also, and critically, emphasized *a second time* his need to respond: "**Your response to this inquiry is necessary in order to track this Litigation.**" (Bolding in original.)

¶ 78. According to the Record, Weisinger sent the complaint to Lanphear, with the direction that he acknowledge its receipt, on May 16, 2006. This was approximately one month before the answer was due. Thus, if Weisinger had acted as a "reasonably prudent person," *see Sentry Ins. v. Royal Ins. Co. of America,* 196 Wis. 2d 907, 915, 539 N.W.2d 911, 914 (Ct. App. 1995), she would have called Lanphear to say some variant of "What's up? I sent the complaint to you on May 16 and I haven't heard from you. Did you get it?" She did not and, in my view, that ends the matter; National Union did not, as a matter of law, exercise "excusable" neglect.

¶ 79. I would reverse the circuit court's order denying the Casper family's motion for default judgment.