MILWAUKEE BOARD OF SCHOOL DIRECTORS,
Plaintiff-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Defendant-Respondent,

MILWAUKEE TEACHERS EDUCATION ASSOCIATION,
Interested Person-Respondent.

Court of Appeals

*No. 2007AP840. Oral argument May 6, 2008.
—Decided July 1, 2008.*

2008 WI App 125

(Also reported in 758 N.W.2d 814.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney and *Donald L. Schriefer*, assistant city attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *David C. Rice*, assistant attorney general.

On behalf of the interested person-respondent, the cause was submitted on the brief of *Richard Saks* and *B. Michele Sumara* of *Hawks Quindel Ehlke & Perry, S.C.*, Milwaukee.

Before Curley, P.J., Wedemeyer and Fine, JJ.

¶ 1. WEDEMEYER, J.   The Milwaukee Board of School Directors (the Board), appeals from a final judgment of the trial court for Milwaukee County affirming the Wisconsin Employment Relations Commission's (WERC) decision that the Board violated the Municipal Employment Relations Act (MERA)[1] by prohibiting the placement of "Attract and Retain" signs in the classrooms and other locations which students customarily occupied.

---

[1] The MERA statutes involved are WIS. STAT. §§ 111.70(2) and 111.70(3)(a)1 (2005–06), which provide in pertinent part:

111.70(2) RIGHTS OF MUNICIPAL EMPLOYEES.  Municipal employees shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .

111.70(3)(a)1 PROHIBITED PRACTICES AND THEIR PREVENTION. It is a prohibited practice for a municipal employer individually or in concert with others:

¶ 2. The Board claims that WERC's decision should be reviewed *de novo,* or at least under the due weight standard in reviewing whether Milwaukee Public Schools (MPS) can lawfully prohibit teachers from posting in certain areas of their classrooms signs that state "Fair Contract NOW!" on one side, and "Do the Right Thing!" on the other side. The Board also claims that WERC erred in applying the balancing test by changing the burden of proof and giving undue weight to the teachers' interest in posting the signs in their classrooms, and too little weight to MPS's interest in barring the signs while students were present. Because, under the due weight standard of review, which we deem appropriate in this case, WERC did not err in ruling that MPS could not bar the display of the signs in the classroom as such action constituted "lawful concerted activity within the protection of [WIS. STAT. §] 111.70(2)," we affirm.

## BACKGROUND

¶ 3. The Milwaukee Teachers Education Association (MTEA) is the collective bargaining representative for teachers employed by the Board. The Board and MTEA were unable to reach an agreement on a contract for the 2003–2005 contract term. Beginning in March 2004, teachers wore buttons during the school day that stated "Attract and Retain." The purpose was to encourage teachers to act together and support MTEA bargaining proposals that would attract good teachers and encourage them to remain as teachers for the Board. In

---

1. To interfere with, restrain or coerce municipal employees in the exercise of their rights guaranteed in sub. (2).

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

April 2004, teachers displayed 11 x 14 inch "Attract and Retain" signs in their classrooms, on the windows, desks and walls. These signs were created for display during mass picketing events. Both sides of the signs stated "Attract and Retain" at the top, followed by the phrase "with a Fair Contract NOW!" on one side and "It's time to Do the Right Thing!" on the other side, presented in large, bold-faced type. MTEA later encouraged teachers to display the signs even more visibly, especially during parent-teacher conferences with copies of the union's letter to the parents next to the signs. These signs and buttons were part of a campaign in which MTEA sought public and parental support and tried to pressure Board members to make an agreement with MTEA. The buttons and signs sometimes prompted questions from students, which the teachers would answer.

¶ 4. On October 27, 2004, MPS administration sent a letter which directed school principals to remove any public displays of literature that constituted "political advertising or advocacy." This was meant to include the "Attract and Retain" signs. It was not, however, meant to apply to the "Attract & Retain" buttons that the teachers wore. It is undisputed that this case is not about the buttons and that MPS did not attempt to prohibit teachers from wearing the buttons. Rather, this case is about the signs displayed in the classrooms. The directive to remove the signs was pursuant to a Board policy that political advertising shall not occur in MPS school buildings in the presence of students, or at any time as such communication threatens to disrupt the educational environment.[2]

---

[2] The policy referenced is found in section 9.08 and provides:

¶ 5. In November 2004, MTEA filed a complaint against the Board with WERC alleging that the Board had interfered with the right of teachers to engage incollective bargaining activities by requiring them to remove the "Attract and Retain" signs. Two days of hearings were conducted in June 2005. On August 3,

(1) No one shall promote any religious or commercial advertising, nor shall any advertisement of such nature be displayed or distributed at any time in school buildings or upon school premises.

(2) Political advertising/advocacy shall not occur in school buildings or upon school premises during work hours in the presence of students or if the communication threatens to disrupt the work or educational environment or interferes with employees' duties. (This does not apply to bumper stickers of reasonable size on automobiles parked in school parking lots, unless the display disrupts the work or educational environment). Any such advertising/ advocacy shall comply with state and federal election laws.

(3) The use in the schools of such aids as textbooks; supplementary books, reference books, charts, maps, calendars, blotters, rulers, posters, models, films, slides, or exhibits by teachers with the permission of their principals to explain or describe subjects, articles, machines, or processes already in use in the Milwaukee Public Schools, even though such aids bear the name, business, or purpose of the publisher or manufacturer, shall not be construed as commercial advertising within the meaning of this policy.

(4) The distribution of awards for students donated by commercial enterprise and approved by the principal shall not be construed as commercial advertising within the meaning of this policy.

(5) Additionally, no requests for privileges shall be granted which in any way or manner are likely to occupy the time and attention of teachers or students, or call for services on the part of school children, or are likely to give precedence or preferment of one student over another, or which involve any phase of commercialism.

(6) The principal shall have the authority to make decisions.

532

2006, WERC declared that the Board violated MERA by prohibiting the signs in the classrooms. After balancing the interests of the teachers in engaging in lawful concerted activity for the purpose of collective bargaining against the Board's interest in prohibiting the signs in the classroom in order to limit distraction and disruption of education, WERC concluded that the Board had not established a sufficient purpose for excluding the signs from being displayed.

¶ 6.    The Board filed a petition for judicial review of WERC's decision on September 1, 2006. On March 30, 2007, the trial court entered a final judgment affirming WERC's decision. The Board now appeals.

## DISCUSSION

¶ 7.    The issue in this case is whether WERC erred in ruling that the Board violated MERA by prohibiting teachers from displaying the union support signs in their classrooms. The trial court affirmed WERC's determination. In reviewing an administrative appeal, we review the decision of the agency, rather than the trial court. *See Richland Sch. Dist. v. DILHR*, 174 Wis. 2d 878, 890, 498 N.W.2d 826 (1993). An agency's findings of fact are conclusive on appeal if they are supported by credible and substantial evidence. *See* Wis. Stat. § 102.23(6). Credible evidence is that evidence which excludes speculation or conjecture. *See Bumpas v. DILHR*, 95 Wis. 2d 334, 343, 290 N.W.2d 504 (1980). Evidence is substantial if a reasonable person relying on the evidence might make the same decision. *See Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 418, 280 N.W.2d 142 (1979). Because we conclude that

WERC's findings of fact in this case are supported by credible and substantial evidence in the record, we are bound by them.

¶ 8.   Three levels of deference may be applied to the conclusions and statutory interpretations of administrative agencies. The highest—"great deference"—will be accorded an agency's decision when:   (1) the agency is charged with the administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its "expertise or specialized knowledge" in arriving at its interpretation; and (4) its interpretation will provide "uniformity and consistency in the application of the statute." *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995). "Where great deference is appropriate, the agency's interpretation will be sustained if it is reasonable— even if an alternative reading of the statute is more reasonable." *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 761, 569 N.W.2d 726 (Ct. App. 1997). We will also defer to an agency's interpretation ' "if it is intertwined with value and policy determinations inherent in the agency's statutory decisionmaking function.' " *Id.* (citations omitted).

¶ 9.   The second level of deference—"due weight" deference—is appropriate when the agency has some expertise in the area in question, but has not developed that expertise to the extent that would necessarily place it in a better position to make judgments concerning the interpretation of the statute than a court. *Id.* at 762. Here too, we "sustain the agency's interpretation if it is reasonable—even if another interpretation is equally reasonable." *Id.* at 762–63. Unlike the situation where great deference is appropriate, however, "due

weight" deference will not permit sustaining the agency's interpretation if another interpretation is more reasonable. *Id.* at 763.

¶ 10.   In cases at the third level, we consider the issues *de novo,* paying no deference at all to the agency's legal conclusions or statutory interpretations. *Id.* These are cases where the issue before the agency is ' "clearly one of first impression,' " or where the agency's position on the issue has been so inconsistent as to provide ' "no real guidance.' " *Id.* (citation omitted). In that situation ' "the weight to be afforded [the agency's] interpretation is no weight at all." ' *Id.* (citation omitted).

¶ 11.   We conclude that the "due weight" standard is appropriate in this case as WERC has some expertise in deciding these issues, but does not satisfy all the requirements for great weight deference. Likewise, *de novo* review is not appropriate as the issue is not one of first impression for WERC.

¶ 12.   In applying the due weight standard of review, we will affirm WERC's determination unless another interpretation would be more reasonable. WERC concluded that:

> Teachers who placed "Attract and Retain" signs in locations within the school building, including classrooms, which students did customarily occupy, were engaging in lawful concerted activity within the protections of Sec. 111.70(2), Stats., subject to the same limitations in terms of number, size and location that the Board has applied to other personal, non-instructional displays.

In reaching this conclusion, WERC engaged in a bal-

ancing analysis—balancing the teachers' right under MERA to participate in concerted activity as an effective method for achieving work place harmony with the Board's interest to maintain the educational integrity of the classroom and not subject the students to proselytizing with partisan political advocacy.

¶ 13.  WERC's decision in this case is seventeen pages long and contains a thoughtful and well-reasoned analysis of the various factors present in this case and the specific contentions raised by the Board. WERC's decision states:

> This petition for declaratory ruling asks us to determine whether teachers have a right under Section 111.70(2) of the Municipal Employment Relations Act (MERA) to place signs and/or wear buttons in their classrooms stating their union's position in an ongoing collective bargaining dispute with their employer.[] We conclude that they do, provided the materials are located (a) on their persons, (b) in areas that students do not customarily occupy, or, (c) in areas (including classrooms) that students do customarily occupy, but only to the extent that the employer has permitted those areas to be used for other personal and non-instructional purposes.

After reviewing the record and all the circumstances in this case, and applying the due weight standard, we conclude that WERC's decision was reasonable and must be affirmed.

¶ 14.  The Board argues that the teachers did not have the right to display the signs in their classroom when children were present because the display constituted "political advocacy," which is proscribed by policy 9.08(2). Thus, WERC was faced with determining whether the display of signs by the teachers constituted political advocacy. WERC concluded that the specific

facts and circumstances present in this case did not constitute the political advocacy activities prohibited by policy 9.08.

¶ 15. In reaching this determination, WERC acknowledged that concerted employee activities frequently involve appeals to the public to generate support and in turn, hopefully, pressure from the public on the employer. WERC noted that "a great deal of union activity in the public sector is both *political* and *concerted* within the protection of MERA" due to the fact that the Board is made up of elected officials, who serve the public and serve as employer to the teachers. However, the fact that the union's appeal has some political dimension will not automatically "remove such concerted activity from the protection of the law," or create "political advocacy" prohibited by policy 9.08. Here, the union's primary message was related to collective bargaining objectives, and not the election, or defeat of a Board candidate. Thus, the concerted "activity retained its legitimate and statutorily-protected purpose, even if it can also be labeled 'political.'" WERC's findings in this regard are supported by credible evidence and its conclusions are reasonable.

¶ 16. WERC also addressed the Board's concern that the signs in the classrooms created a disruption or distraction to the educational mission of the school and therefore resulted in an abuse of the children in the classrooms. WERC found that the record failed to establish anything more than minimal discussion about the signs and thus, did not justify banning them from the classrooms: the buttons and signs "did not generate more than minimal discussion with students nor any significant proselytizing in favor of MTEA's bargaining position or against the Board's." In reviewing

the record, we conclude that there is credible evidence to support WERC's finding in this regard, namely the testimony of teachers indicating that there was little inquiry about the signs, and when a student did ask a question, the response offered was an abbreviated explanation. The Board argues that the union witnesses who testified about students' response to the displayed signs were not credible as they attempted to minimize students' reaction to the signs, resulting in conflicting testimony. WERC is the judge of the credibility of the witnesses and the reviewing court is not to substitute its judgment for the judgment of WERC. *See St. Francis Hosp. v. Wisconsin Employment Relations Bd.*, 8 Wis. 2d 308, 318, 98 N.W.2d 909 (1959). Here, we are not in a position to assess the credibility of the witnesses, but defer to WERC's determination in that regard.

¶ 17.  The Board also asserts that the signs had to have caused distraction in the classroom due to the bold statements contained on them of "Do the Right Thing" and "Fair Contract Now," creating the implication that the Board was doing something wrong or being unfair with the teachers. WERC concluded that these phrases were no more offensive than the "Attract and Retain" phrases on the buttons, to which the Board did not object. We agree that WERC's conclusion is reasonable. "Do the Right Thing" is a common phrase, and although some may interpret it to mean the Board is doing something wrong, within the context of the classroom, that is not more reasonable than WERC's interpretation.

¶ 18.  We also agree with WERC's conclusion that these signs would not provoke any more questioning or distraction than the teacher's other personal postings, which are specifically permitted by the Board. A teacher's posting of a Chicago Bears poster for instance, is much more likely to provoke a response from a devoted

Packer fan than a sign stating "Do the Right Thing." WERC concluded that the Board cannot discriminate against concerted teachers' activity by issuing a blanket prohibition on union-related signs while permitting a variety of other non-instructional materials to be posted by teachers, which has been left to the personal discretion of the teachers.

¶ 19. Further, we are not convinced that this decision will open the door to more questionable union activities within the classroom. This case does not and should not be interpreted to develop a broad or sweeping rule to apply across the board regarding all union-suggested postings in the classroom. *See City of Beloit v. WERC*, 73 Wis. 2d 43, 52–55, 242 N.W.2d 231 (1976). Rather, this case should be limited to the particular facts presented here and should be viewed as a reaffirmance that issues such as those presented here must be reviewed on a case-by-case basis.

¶ 20. Our review demonstrates that WERC engaged in a specific factual review of the individual circumstances present in the instant case. It engaged in a balancing of rights between the teachers right to engage in concerted activity under WIS. STAT. § 111.70(2), and the Board's right to regulate the activity taking place in the schools so as to protect the educational mission of the district and prevent the manipulation of its students. In assessing the particular factors in this case, WERC analyzed a variety of factors, including the size, number and location of the "Attract and Retain" signs, cautioning that:

> displaying a single union poster, along with other personal items, may fall within the parameters of what the Board has permitted on or near a teacher's desk. A display within such customary modest parameters is not objectively or inherently so controversial as to be

539

disruptive. On the other hand, papering a classroom area, including a desk, with multiple signs could so augment the effect of the display as to create disruption or distraction and thus exceed the pale of the law's protection. Such a display could well become the visual focal point of the classroom, thus overwhelming the educational effects of the instructional materials that may be on display . . . . We wish to emphasize, therefore, that the right to display these MTEA signs in the classroom is limited to the same level that has been permitted in any particular building for other forms of non-instructional displays.

WERC further considered the tone and content of the signs, and the evidence presented regarding classroom discussion about the signs. It considered the teachers' interests and the statute's purpose of protecting concerted activities as an effective method for achieving work place harmony. WERC then balanced all of these factors with the Board's right to protect the educational integrity of the classroom, to prevent political advocacy in the classroom and to prevent teachers from proselytizing or manipulating the students, who are required by law to be present in their classroom. After engaging in a thorough and complete balancing and consideration of all the interests at play, WERC concluded: "that the Board has not established a sufficient managerial purpose for excluding Union signs from being displayed in the classroom, within the same parameters that apply to the display of other materials not related to school district business."[3] The Board argues in this appeal that

[3] The Board also argues that WERC used a different balancing test in this case than it has in the past. The Board argues that the balancing test set forth in *Kenosha Teachers Union Local 557 v. City of Kenosha Bd. of Educ.*, WERC Dec. No. 6986–C (Feb. 25, 1966), required the presumption that the employer rules prevailed unless the union proved that the rule

WERC placed too much weight on the teachers' interests and not enough weight on the Board's interests. We are not convinced. Weight, like credibility, is left to the discretion of the factfinder. Our review demonstrates that the weight afforded to the competing interests was reasonable, and, accordingly, we cannot hold that WERC erred in this regard.

¶ 21. In applying the due deference standard of review after examining the record in this case, we must affirm WERC's determination. The findings of fact are supported by credible evidence in the record and WERC's conclusion was reasonable. We are not convinced that the Board's assertion that the signs constituted political advocacy is a *more* reasonable conclusion based on all the circumstances presented here. Accordingly, based on the foregoing and applying the due deference required of this court, we affirm the decision of the trial court, which affirmed the determination of WERC.

*By the Court.*—Order affirmed.

---

was enacted for an improper reason. We are not convinced that WERC applied a balancing test substantially different from that set forth in *Kenosha*. WERC acknowledged that the employer has the right to enact rules, but that when a rule is challenged, the interests of both sides must be balanced to determine whether the rule infringes upon the statutory right of the employees to engage in lawful, concerted activity.

This court acknowledges the Board's assertion that the discussion regarding burden of proof, which was emphasized in *Kenosha*, appears to have received less of an emphasis in WERC's subsequent cases. *See District 1199W/United Pfof'ls for Quality Health Care v. University of Wis. Hosp.*, WERC Dec. No. 30302–C (Apr. 12, 2004). Nevertheless, the balancing test set forth in *Kenosha* continues to be applied and was sufficiently applied in this case.