Earnest Ellis, Plaintiff-Appellant,

v.

State of Wisconsin Department of
Administration, Wisconsin State Department of
Transportation and Labor & Industry Review
Commission, Defendants-Respondents.

Court of Appeals

*No. 2010AP1374. Submitted on Briefs February 8, 2011.
—Decided April 26, 2011.*

2011 WI App 67

(Also reported in 800 N.W.2d 6.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ronald Bornstein* of *Bornstein Law Offices, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *David A. Hart*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Earnest Ellis appeals from an

order: (1) denying his motion for default judgment against the Department of Administration ("the Department") and the Labor & Industry Review Commission ("the Commission"); and (2) affirming the Commission's decision in which it concluded that he had not, following a work injury, established a prima facie case of permanent total disability under the "odd-lot" doctrine, and therefore was not entitled to permanent total disability benefits. Ellis argues that the trial court erred in denying his motion for default judgment in his WIS. STAT. ch. 102 worker's compensation claim against the Department and the Commission because both agencies failed to timely answer his complaint, and because the Commission failed to present a meritorious defense regarding its late answer. Ellis also argues that the Commission's conclusion that he failed to establish a prima facie case for permanent and total disability on an odd-lot basis, and two of the Commission's findings which accompany this conclusion, are not supported by credible and substantial evidence. Ellis further argues that the trial court's decision affirming the Commission's decision misapplies the odd-lot doctrine.

¶ 2. We hold that because default judgment is unavailable to plaintiffs in WIS. STAT. § 102.23 (2009–10)[1] actions when the employer has timely answered, the trial court did not err in denying Ellis's motion for default judgment. We further conclude that Ellis failed to establish a prima facie case for permanent total disability under the odd-lot doctrine, and that the Commission's finding regarding the effect of Ellis's asthma on his ability to work was supported by credible and substantial evidence. Moreover, we do not address

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

the Commission's finding regarding whether Ellis had a duty to notify his employer of his work restrictions or whether the trial court properly applied the odd-lot doctrine because neither of those issues is pertinent to our analysis of the issues properly on appeal. We affirm.

## I. BACKGROUND.

¶ 3. On April 16, 2003, Ellis, a civil engineering technician for the Department of Transportation, was on the job parked in an automobile in a construction area on Highway I-94 in Milwaukee when the driver of another vehicle—traveling in the wrong lane in the construction area—rear-ended his vehicle. Ellis sustained numerous injuries, including headaches, neck pain, and pain in his left arm.

¶ 4. Following the accident, Ellis intermittently received worker's compensation benefits, including temporary total disability and temporary partial disability, from April 16, 2003, through October 5, 2003. Other than this period of temporary total and partial disability, Ellis continued working at the Department of Transportation until October 2004.

¶ 5. When his symptoms from the accident did not fully dissipate, Ellis sought further treatment from Dr. Spencer Block. Dr. Block, who had been treating Ellis since the accident, performed cervical surgery—i.e., surgery to Ellis's spine. Dr. Block noted that the surgery was meant to alleviate a degenerative condition that, although preexisting in nature, was aggravated beyond normal progression by the work accident. The surgery took place in October 2004.

¶ 6. After surgery, Ellis continued to suffer from chronic headaches and consequently stopped working altogether. Ellis began receiving treatments for his

235

headaches, including Oxycodone and painkiller injections. According to medical records kept by Dr. Block, the severity of Ellis's headaches decreased significantly over time. In a report dated December 14, 2006, Dr. Block noted:

> [Ellis] reports that his symptoms are significantly improved at this time. He still reports that he is having daily headaches, but they are much less severe in intensity. He is satisfied with his condition at this time and feels no need for further intervention . . . . I am very pleased with Mr. Ellis's condition. I agree that as long as he is satisfied with his condition, there is no need for further intervention at this time.

¶ 7. Approximately one year after his surgery, in October 2005, Ellis took disability retirement from the Department of Transportation. He eventually sought permanent total disability benefits from his former employer. To this end, Ellis testified in two hearings in front of an administrative law judge for the Department of Workforce Development, Worker's Compensation Division.

¶ 8. At the hearings, Ellis testified[2] that that he stopped working at the Department of Transportation because his headaches were so severe that they interfered with his ability to work. He testified that his former position as a civil engineering technician was very demanding. It required substantial amounts of time doing "field work," walking long distances and pounding stakes into the ground on freeways, and regularly working as many as seventy-five hours a week during summer. Ellis also testified that he possesses the required education and skills necessary for sedentary office work, including word processing, database pro-

---

[2] No other witnesses testified at the hearings.

cessing, drafting, and report writing. He further testified that he suffered from asthma and chronic obstructive pulmonary disease ("COPD"), which interfered with his ability to find alternative employment.

¶ 9. At the hearings, Ellis also submitted numerous documents. These documents included Dr. Block's December 14, 2006 report, which, as previously noted, stated that Ellis's headaches had in fact lessened in their severity over time, and that Ellis was "satisfied" with his condition. The documents also included Dr. Block's disability evaluation dated December 19, 2006, which stated that Ellis's disability level was at twenty-seven percent. The documents also included a functional capacity evaluation[3] that noted:

> Mr. Ellis is limited to part-time, sedentary work, at best. He is limited to sitting for two hours per day. This is not compatible with the performance of sedentary work even on a part-time basis. Mr. Ellis cannot maintain his neck in a static posture as to perform desk/computer work. [He] requires frequent breaks. Based upon these restrictions . . . the only work available to Mr. Ellis would be odd lot in nature.

¶ 10. When the ALJ awarded him twenty-seven percent disability but denied his claim for total permanent disability, Ellis appealed to the Commission, which found:

> The commission finds that [Ellis's] award of 27 percent functional disability due to a cervical injury and need for surgery caused by the motor vehicle

---

[3] This document is titled "Vocational Assessment Report." Because the parties refer to the document as the "functional capacity evaluation," however, we will also refer to it as the "functional capacity evaluation."

237

accident on April 16, 2003, is the appropriate award. The applicant has failed to present a valid claim for further loss of earning capacity on a functional basis or claim for permanent total disability. Pursuant to WIS. STAT. § 102.17(1)(d), certified reports of physicians, podiatrists, surgeons, psychologists and chiropractors are admissible as evidence of the diagnosis, necessity of treatment, and cause and extent of disability. In this case, no physician has determined the applicant's physical restrictions due to the work injury in April 2003. The functional capacity evaluation relied on . . . was prepared by a physical therapist who is not qualified under the statute to render an opinion as to the extent of disability and permanent restrictions. Dr. Block[4] did not present any further comment or report of physical restrictions after the functional capacity evaluation. The commission finds that the applicant has failed to establish a prima facie case for permanent total disability on an odd-lot basis.

¶ 11. Additionally, the Commission found that even if Ellis *had* established a prima facie case of permanent total disability, he did not establish total disability because he had a duty to notify his employer of his work restrictions. In sum, the Commission determined:

Given the fact that [Ellis] failed to present sufficient evidence to establish his prima facie case for permanent total disability on an odd-lot basis, and

---

[4] Given the context of this comment as we understand it and as it is described in the parties' briefs, the reference to Dr. Block is a typographical error. The Commission is referring not to Dr. Block, but to Dr. Gorelick, one of Ellis's treating physicians, who, approximately thirteen months after the functional capacity evaluation was completed, noted in a report that the functional capacity evaluation "appears to be a valid study" and that he "stand[s] behind [its] findings."

238

given the applicant's more severe restrictions to his hours of work are related to his non-work-related asthma, and given the fact that [Ellis] failed to notify his employer of his permanent restrictions, the administrative law judge appropriately dismissed [Ellis's] claim.

¶ 12. Ellis appealed the Commission's decision to the trial court. The trial court affirmed the Commission's decision, and Ellis now appeals.

## II. ANALYSIS.

¶ 13. On appeal, Ellis argues that the trial court erred in denying his motion for default judgment against the Department and the Commission. Ellis also argues that the Commission's conclusion that he failed to establish a prima facie case for permanent and total disability on an odd-lot basis, and two of the factual findings which accompany this conclusion, are not supported by credible and substantial evidence. Ellis further argues that the trial court's decision affirming the Commission's decision misapplies the odd-lot doctrine. We discuss each argument in turn.

A. *The trial court did not err in denying Ellis's motion for default judgment because default judgment is unavailable to plaintiffs in Wis. Stat. ch. 102 actions where the employer has timely answered.*

¶ 14. Ellis argues that the trial court should have granted his motion because the Commission and the Department failed to timely answer his complaint and because the Commission failed to present a meritorious defense to its late answer. Ellis's employer, the Commission, and the Department argue that default judgment

239

was not available to Ellis because it conflicts with the procedures in WIS. STAT. ch. 102, which govern Ellis's claim.

■■■

¶ 15. Generally, the question of whether to grant a default judgment is committed to the trial court's discretion. *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶ 9, 242 Wis. 2d 153, 624 N.W.2d 375. "On review, we will not disturb the trial court's decision to enlarge the time for filing an answer and to deny default judgment unless the [trial] court erroneously exercised its discretion." *Casper v. American Int'l S. Ins. Co.*, 2010 WI App 2, ¶ 12, 323 Wis. 2d 80, 779 N.W.2d 444. In other words, "[w]e must affirm the trial court's decision so long as it 'represents a proper application of the law and is a determination that a reasonable judge could have reached.' " *See id.* (citation omitted). "We do not test the [trial] court's discretionary decision by our sense of what might be a 'right' or 'wrong' decision in the case." *See id.* (some internal quotation marks omitted). The mere failure of a party to timely join issue does not, as a matter of right, entitle the other party to a default judgment. *See Riggs Marine Serv., Inc. v. McCann*, 160 Wis. 2d 846, 850, 467 N.W.2d 155 (Ct. App. 1991). Rather, we uphold the trial court's determination "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *See Casper*, 323 Wis. 2d 80, ¶ 12 (citation and some quotation marks omitted).

¶ 16. Ellis's claim, however, is different. Ellis's claim—a worker's compensation claim—is governed by the Worker's Compensation Act, articulated in chapter 102 of the Wisconsin Statutes. Section 102.23(1)(a) of the Act makes clear that a trial court's review of claims filed under the Worker's Compensation Act is not

governed by the general rules of civil procedure or even the general rules of administrative procedure;[5] instead, review of such claims is subject to review only as provided by Wis. Stat. § 102.23. *See* § 102.23(1)(a).

¶ 17. Whether default judgment is available in a Wis. Stat. ch. 102 proceeding is therefore a statutory construction question, which we review *de novo. See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 11, 308 Wis. 2d 103, 746 N.W.2d 762.

¶ 18. Turning to Wis. Stat. § 102.23, we first note that nowhere does the statute provide for default judgment. Additionally, § 102.23(1)(e) expressly provides that the administrative order at issue may only be set aside for the following grounds: (1) that the Commission acted without or in excess of its powers; (2) that the order was procured by fraud; or (3) that the Commission's findings of fact do not support the order. *See id.* Indeed, the remedy of default judgment would directly conflict with the scope of judicial review as provided in the statute because it would prevent the trial court from affirming or denying an administrative order in accordance with the mandates outlined in § 102.23(1)(e).

¶ 19. These reasons were dispositive in *Wagner v. State of Wisconsin Medical Examining Board*, 181 Wis. 2d 633, 638, 642–44, 511 N.W.2d 874 (1994), in which our supreme court held that default judgment is unavailable for administrative proceedings reviewed under Wis. Stat. ch. 227. *Wagner* held that default judgment is unavailable for plaintiffs in these proceedings because ch. 227 did not contemplate default judg-

[5] Chapter 227 of the Wisconsin Statutes governs procedure in administrative actions and applies to cases arising under Wis. Stat. § 76.38 (1993–94), and §§ 76.39, 76.48, and 76.91. Wis. Stat. § 227.03(1).

ment as a remedy for plaintiffs seeking review of the agency's actions, and because default judgment would conflict with the scope of review outlined for ch. 227 proceedings. *See Wagner*, 181 Wis. 2d at 642–44. We find these reasons persuasive with regard to the Wis. Stat. § 102.23 action at issue in Ellis's case.

¶ 20. Moreover, we agree with the trial court that allowing default judgment in Ellis's case—and in all Wis. Stat. § 102.23 cases where the employer has timely answered—would lead to absurd results. It is undisputed that the DOT, Ellis's employer, did timely answer Ellis's complaint. Significantly, the Commission's determination in a case like this establishes worker's compensation liability for the employer; the Commission's default should not short-circuit the trial court's duty under the statute to determine whether the Commission's conclusion and findings are supported by the evidence. In other words, if the trial court were to enter judgment in favor of Ellis, then the employer's right to participate in the action and to argue in support of the Commission's decision (as allowed by § 102.23(1)(c)) would be abrogated. We therefore conclude that whether the Commission formally joined in the employer's brief or not, it makes no difference as to the trial court's duty to review the record and either affirm or set aside the Commission's order.

¶ 21. For all the foregoing reasons, we are not persuaded by Ellis's numerous arguments—all of which construe the issue as being governed by the rules of civil procedure as outlined in Wis. Stat. § 801.02—that trial court erred in denying default judgment. As noted, Wis. Stat. chs. 801 to 847, which govern procedure and practice in civil actions "*except* where different procedure is prescribed by statute or rule," *see* Wis. Stat. § 801.01(2) (emphasis added), do not apply in the in-

stant case because WIS. STAT. § 102.23(1)(a) expressly provides that they do not apply.

■

¶ 22. Accordingly, we hold that the trial did not err in denying default judgment to Ellis because default judgment is unavailable to plaintiffs under WIS. STAT. § 102.23 when the employer has timely answered.

B. *Ellis did not establish a prima facie case of total disability under the "odd-lot" doctrine.*

■

¶ 23. Whether the Commission properly concluded that Ellis failed to present a prima facie case for permanent total disability on an odd-lot basis is a question of law that we review *de novo. See Beecher v. LIRC*, 2004 WI 88, ¶¶ 22–26, 273 Wis. 2d 136, 682 N.W.2d 29; *Emmpak Foods, Inc. v. LIRC*, 2007 WI App 164, ¶ 5, 303 Wis. 2d 771, 737 N.W.2d 60 (*Beecher* mandates *de novo* review where agency's legal conclusion is based on judicially-created doctrine). Because we do not regard this matter "as too obvious to require explanation," *see Beecher*, 273 Wis. 2d 136, ¶ 24, we "think [that] some discussion is in order," *see id.*, and set forth our reasoning below.

■

¶ 24. We first acknowledge that although "[w]hether a litigant has established a prima facie case is [generally] a question of law," *see id.*, ¶ 22, in the agency review context, " 'labeling an issue as a question of law does not mean that a court may disregard an agency's determination[,]' " *see id.*, ¶ 23 (citation omitted). For example, we will give an agency's interpretation of a statute "great weight" deference when: "(1) the agency

243

is charged with administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its expertise or specialized knowledge in arriving at its interpretation; and (4) its interpretation will provide uniformity and consistency in the application of the statute." *See id.* (citations omitted). Likewise, "[a] lesser degree of deference, 'due weight' deference, 'is appropriate when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute.' " *Id.* (citations omitted). On the other hand, "[n]o deference is owed to an agency interpretation where the issue is one of first impression, where the agency has no special expertise, or where the agency's position has been so inconsistent that it provides no real guidance." *Id.*

■

¶ 25. In the instant case, the reasons for which we would give the agency deference do not apply. The Commission's determination regarding whether Ellis presented a prima facie case under the odd-lot doctrine "does not purport to interpret a[ny] statute or administrative rule." *See id.*, ¶ 26. Rather, the odd-lot doctrine is a court-created doctrine that operates as a rule of evidence. *Id.*, ¶¶ 31–32; *Emmpak Foods, Inc.*, 303 Wis. 2d 771, ¶ 5. The supreme court "retains the power to explain, modify, or overrule" this doctrine; moreover, it "need not defer to agency interpretations of [its] own decisions." *See Beecher*, 273 Wis. 2d 136, ¶ 26. With regard to the level of deference that a reviewing court should give to the Commission's determination regarding whether a litigant has failed to present a prima facie case on an odd-lot basis, our supreme court has expressly held that our standard of review is *de novo. See id.*, ¶¶ 22–26; *see also Cargill Feed Div./Cargill Malt*

244

*and AIG Cas. Co. v. LIRC*, 2010 WI App 115, ¶ 17, 329 Wis. 2d 206, 789 N.W.2d 326 (applying *de novo* review to the Commission's interpretation of the odd-lot doctrine).[6] We will therefore review *de novo* the issue of whether Ellis failed to present a prima facie case on an odd-lot basis. *See Beecher*, 273 Wis. 2d 136, ¶ 26; *Emmpak Foods, Inc.*, 303 Wis. 2d 771, ¶ 5; *Cargill*, 329 Wis. 2d 206, ¶ 17.

¶ 26. With the appropriate standard of review in mind, we turn now to whether Ellis has in fact presented a prima facie case for total disability under the odd-lot doctrine.

¶ 27. The odd-lot doctrine embodies the idea that "total disability under worker's compensation law should not be taken literally to mean complete and utter helplessness, because some injured workers find themselves, because of their age, education, training, and overall capacity, incapable of becoming ordinary work[ers] of average capacity in any well known branch of the labo[]r market." *Beecher*, 273 Wis. 2d 136, ¶ 31 (citations, some bracketing, and quotation marks omitted). Under the odd-lot doctrine, when an employee " 'is so injured that he can perform no services other than those which are so limited in quality, dependability, or

---

[6] *But see Beecher v. LIRC*, 2004 WI 88, ¶ 79, 273 Wis. 2d 136, 682 N.W.2d 29 (Abrahamson, C.J., concurring) (expressing minority view of the court that the Commission's determination is entitled to great weight deference concerning the odd-lot doctrine because: (1) the agency is charged with administering the particular statute at issue; (2) the agency's interpretation is one of long-standing; (3) the agency employed its expertise or specialized knowledge in interpreting the statute; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute at issue).

quantity that a reasonably stable market for them does not exist,' " in other words, if the accident leaves the worker in the position of an " 'odd lot' " in the labor market, "the burden of showing that the claimant is in fact employable and that jobs do exist for the injured claimant shifts to the employer." *Balczewski v. DILHR*, 76 Wis. 2d 487, 493–95, 251 N.W.2d 794 (1977) (citation and quotation marks omitted).

¶ 28. The doctrine operates as a rule of evidence. *Id.*, 76 Wis. 2d at 495. Specifically, it "creates a burden-shifting framework that determines which party in a . . . worker's compensation case is responsible for producing evidence sufficient to go forward with a claim for permanent total disability on an odd-lot basis." *Beecher*, 273 Wis. 2d 136, ¶ 32. " 'Where a claimant makes a prima facie case that he [or she] has been injured in an industrial accident and, because of injury, age, education, and capacity, he [or she] is unable to secure any continuing and gainful employment, the burden of showing that the claimant is in fact employable and that jobs do exist for the injured claimant shifts to the employer.' " *Id.* (citation and brackets omitted).

> The import of this evidentiary burden-shifting rule is that if the employee can make out a prima facie case for odd-lot disability, then he need not produce evidence that he has attempted to secure suitable alternate employment; he has prima facie established his inability to secure continuing and gainful employment, and requiring him to produce evidence of an actual job search is an unnecessary exercise under this doctrine. It is up to the employer under these circumstances to demonstrate that the injured employee is actually employable and that there are actual jobs available to him.

*Id.*, ¶ 44.

¶ 29. To determine whether Ellis has established a prima facie case, we ask whether he, the employee, has stated facts which, " 'if they remain uncontradicted by the opposing party's affidavits, resolve all factual issues in [his] favor.' " *See id.*, ¶ 50 (some punctuation added; citation omitted). If he has not, our analysis ends there. *See id.*, ¶ 55.

¶ 30. After reviewing all of the evidence Ellis submitted, including the documents he submitted at the hearings on December 4, 2007, and September 23, 2008, as well as his testimony at those two hearings, we conclude that Ellis has not established a prima facie case of permanent total disability on an odd-lot basis.

¶ 31. Turning first to Ellis's testimony, we conclude that it would not, if uncontradicted, resolve all factual issues in his favor. *See id.*, ¶ 50. While we acknowledge that Ellis did in fact testify that the headaches he suffered prevented him from working at his former position as a civil engineering technician, he also testified that his position was very demanding. It required substantial amounts of time doing "field work," walking long distances and pounding stakes into the ground on freeways, and regularly working as many as seventy-five hours a week during summer. Significantly, Ellis testified that he possesses the required education and skills necessary for sedentary office work, including word processing, database processing, drafting, and report writing. Moreover, Ellis also testified that he did try to obtain part-time employment as a janitor after his surgery, but that he was unable to perform the work primarily because of his asthma and COPD. While his testimony regarding this matter mentions headaches, the issue Ellis himself identified was

his inability to breathe, caused primarily by the buildup of mucus. Ellis's asthma and COPD were caused *not* by injuries from the April 16, 2003 accident, but were preexisting. In fact, we conclude, contrary to Ellis's arguments, that, given Ellis's testimony, as well as the documentary evidence Ellis submitted, that the ALJ's factual finding that "more severe restrictions to [Ellis's] hours of work are related to his non-work-related asthma" was supported by credible and substantial evidence in the record.[7]

¶ 32. We turn, next, to Ellis's submitted documents, in particular, the functional capacity evaluation. *See id.* While the evaluation does state that "the only work available to Mr. Ellis would be odd lot in nature," the Commission disregarded it because it was not created by a physician, podiatrist, surgeon, dentist, psychologist, physician assistant, advanced practice nurse prescribers, or chiropractor. *See* WIS. STAT. § 102.17(1)(d)1. (Reports of "physicians, podiatrists, surgeons, dentists, psychologists, physician assistants,

---

[7] We uphold any action based on an administrative body's findings of fact if it is based on substantial evidence. *See Knight v. LIRC*, 220 Wis. 2d 137, 149, 582 N.W.2d 448 (Ct. App. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton v. DILHR*, 94 Wis. 2d 611, 617, 288 N.W.2d 857 (1980) (citations and quotation marks omitted). "Substantial evidence is not equated with preponderance of the evidence. There may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the agency to determine which view of the evidence it wishes to accept." *Id.* (citation and quotation marks omitted). Generally, we cannot evaluate the credibility or weight of the evidence on any finding of fact. *See id.* at 618. Instead, we must examine the record for substantial evidence that supports the agency's conclusion. *See id.* (citations omitted).

advanced practice nurse prescribers, and chiropractors" may constitute "*prima facie* evidence as to the matter contained in those reports."). This is a legal conclusion that we give great weight because: (1) the Commission is charged by the legislature with administering the Worker's Compensation Act, *see, e.g., Daimler-Chrysler v. LIRC*, 2007 WI 15, ¶ 20, 299 Wis. 2d 1, 727 N.W.2d 311; (2) the Commission's interpretation is one of long standing, *see Conradt v. Mt. Carmel School*, 197 Wis. 2d 60, 68–69, 539 N.W.2d 713, (Ct. App. 1995) (under § 102.17(1)(d), the Commission determines the weight to be given medical witnesses); (3) the Commission employed its expertise in forming the interpretation; and (4) the Commission's interpretation will provide uniformity in the application of the statute, *see CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 573, 579 N.W.2d 668 (1998). *See also City of Elroy v. LIRC*, 152 Wis. 2d 320, 324, 448 N.W.2d 438 (Ct. App. 1989) (an administrative agency's interpretation of its own regulations is entitled to controlling weight unless inconsistent with the regulation or clearly erroneous). Under the " 'great weight deference' " standard, we affirm the Commission's "legal conclusions unless they are unreasonable." *See International Paper Co. v. LIRC*, 2001 WI App 248, ¶ 10, 248 Wis. 2d 348, 635 N.W.2d 823. "We will not substitute our judgment for [the Commission's] application of the law to the facts if a rational basis exists in law for [the Commission's] interpretation, and it does not conflict with controlling precedent." *Id.* Given that the report was not created by one of the medical professionals listed in the controlling statute, we cannot say that the Commission's interpretation was unreasonable. Furthermore, we are not persuaded by Ellis's argument that the Commission erred in not considering the report because Dr. Gorelick noted, in the concluding

249

paragraph of a separate report generated more than thirteen months after the evaluation was completed, that "it appears to be a valid study" and that he "stand[s] behind [its] findings." The fact that the Commission found Dr. Gorelick's conclusions about the functional capacity evaluation unpersuasive here is reasonable because Dr. Gorelick's statements were vague and did not acknowledge which particular portions of the lengthy evaluation he agreed with.

¶ 33. Looking at the remaining documents Ellis submitted, we conclude they do not resolve all factual issues in his favor. *See Beecher*, 273 Wis. 2d 136, ¶ 50. For example, while several of the medical reports do note that Ellis experienced chronic severe headaches, Dr. Block's report from December 2006 notes that the headaches, while persistent, were "much less severe in their intensity." This report also noted that the doctor was "very pleased" with Ellis's condition and that "no further intervention" was necessary. Dr. Block later established that Ellis suffered twenty-seven percent disability, a conclusion with which Dr. Gorelick agreed. Finally, we note that an overwhelming majority of the records Ellis submitted reference his problems with shortness of breath due to his asthma and COPD. When analyzed in conjunction with Ellis's testimony in this case, we cannot conclude that Ellis has established a prima facie case of permanent total disability under the odd-lot doctrine. *See id.*

¶ 34. Ellis next takes issue with the Commission's finding that even if Ellis *did* establish a prima facie case, he did not establish total disability because he had a duty to notify his employer of his work restrictions. Because we agree with the Commission that Ellis has not presented a prima facie case for permanent total disability, *see id.*, we need not address this argument,

*see State v. Zien*, 2008 WI App 153, ¶ 3, 314 Wis. 2d 340, 761 N.W.2d 15 (cases should be decided on narrowest possible ground).

C. *Whether the trial court properly applied the odd-lot doctrine is not properly before this court because we review the Commission's decision, not the trial court's.*

¶ 35. As a final matter, we note that Ellis also argues that the trial court's decision misapplies the elements of the odd-lot doctrine. We need not address this argument, either, *see id.*, because we review the Commission's decision, not the trial court's, *see Bosco v. LIRC*, 2004 WI 77, ¶ 16, 272 Wis. 2d 586, 681 N.W.2d 157 (in an appeal from a trial court arising out of an administrative review proceeding, we review the decision of the agency, not the decision of the trial court).

*By the Court.*—Order affirmed.