# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP481**

Cir. Ct. No. 2017CV57

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

MARIE I. MCROBERTS,

    PETITIONER-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION, MCMILLAN ELECTRIC CO. AND TWIN CITY FIRE INSURANCE COMPANY,

    RESPONDENTS-RESPONDENTS.

        APPEAL from an order of the circuit court for Pierce County: JOSEPH D. BOLES, Judge. *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Marie McRoberts appeals from a circuit court order affirming an order of the Wisconsin Labor and Industry Review Commission (LIRC). McRoberts argues LIRC erred by finding that McRoberts was not permanently disabled as a result of an April 17, 2013 fall in her employer's parking lot and by dismissing her worker's compensation application. We affirm.

## BACKGROUND

¶2     Following her slip and fall, McRoberts went to the emergency room and complained of pain that radiated up the right lateral side of her back. She was diagnosed with a soft tissue contusion injury. An x-ray showed mild degenerative disc disease but no evidence of fracture or dislocation. Almost two years later, McRoberts saw Dr. Michael Fitzgerald. In a report prepared in support of McRoberts' claim for worker's compensation due to her permanent total disability resulting from her fall, Fitzgerald opined that although the April 17, 2013 fall did not directly cause any disability, it did cause three percent permanent partial disability for chronic pain that was aggravated, accelerated and precipitated by the work injury.

¶3     Doctor Stephen Barron conducted a record review at the request of McRoberts' employer's insurance carrier. In his report, Barron concluded the work accident caused a temporary aggravation of McRoberts' pre-existing back condition. Specifically, he opined that the work injury caused a soft tissue thoracolumbar sprain that fully resolved by July 17, 2013. In a subsequent report, after reviewing records that revealed McRoberts suffered severe symptoms in the same area of her low back immediately prior to her fall, Barron changed his

opinion and concluded McRoberts' fall did not cause a new injury and that McRoberts' symptoms were simply a manifestation of her pre-existing condition.

¶4      A hearing was held on McRoberts' application for benefits. At the outset of the hearing, the administrative law judge (ALJ) noted that McRoberts is claiming "this accident caused three percent permanent partial disability to the whole body on a functional basis. She [is claiming] compensation for permanent and total disability based on a loss of earning capacity. She [is requesting] an interlocutory order." Following the hearing, the ALJ found "[McRoberts] has a long history of back problems. The records document back complaints since 1997."

¶5      The ALJ noted that McRoberts suffered frequent flare-ups of back pain. In particular, she suffered a significant aggravation after leaning over to clean a bathtub in September 2006. She told a physician in May 2008 that her low back pain had never gone away since the bathtub incident. She had another significant flare-up after a motor vehicle accident in late December 2009. On March 23, 2013, McRoberts slipped on ice and reported subsequent low back pain. On a scale of one to ten, she complained of level nine back pain that was migrating into her right calf. On April 12, 2013—five days prior to the fall at her employment—McRoberts saw her primary care physician, complaining of severe low back pain that started about three weeks prior when she awoke with pain. She said that on two occasions she spontaneously lost all sensation in her legs and fell to the ground.

¶6      The ALJ did not find McRoberts credible. The ALJ also found that Dr. Fitzgerald "did not have an accurate history of [McRoberts' condition] … and this weakens his opinion." The ALJ concluded:

3

> I am satisfied that applicant sustained a back injury arising out of her employment on April 17, 2013. Based on the more credible evidence and the initial opinion from Dr. Barron, this injury was in the nature of [a] thoracolumbar sprain. I further adopt Dr. Barron's opinions as stated in his first report.[1] Specifically, this was a soft tissue injury that fully resolved by July 17, 2013. This injury did not cause any permanent disability on a functional or vocational basis. The applicant's ongoing symptoms are a continuation of her longstanding pre-existing back problems.

¶7 McRoberts petitioned for LIRC review. McRoberts argued that the ALJ erred by not concluding she was permanently and totally disabled on an odd-lot basis[2] as a result of the fall in her employer's parking lot. McRoberts contended Dr. Barron's opinion was predicated on a non-existent "phantom" MRI report, and therefore his medical opinion could not be considered credible and substantial evidence as a matter of law.

¶8 Regarding the alleged "phantom" MRI, LIRC noted Dr. Barron's report discussed a pre-injury MRI, which indicated that McRoberts had significant low back problems. Barron further stated "she had an MRI scan of her lumbar spine 1 month prior to the accident [at issue] with an indication of low back pain extending down the right leg. … Her subsequent MRI scan and x-rays did not

---

[1] The ALJ did not rely on Dr. Barron's subsequent report.

[2] The "odd-lot" doctrine embodies the idea that "total disability under worker's compensation law should not be taken literally to mean complete and utter helplessness, because some injured workers find themselves, because of their age, education, training, and overall capacity, incapable of becoming ordinary work[ers] of average capacity in any well known branch of the labor market." *See Ellis v. DOA*, 2011 WI App 67, ¶27, 333 Wis. 2d 228, 800 N.W.2d 6. Under the odd-lot doctrine, when an employee is so injured that he or she can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, the employee is in the position of an "odd-lot" in the labor market. *See id.*

show any objective change in her condition." However, no MRI scan was taken of McRoberts' low back after her fall and prior to the preparation of Barron's report. LIRC found the "most reasonable interpretation of the last sentence of this portion of Dr. Barron's report is that he intended to say 'subsequent x-rays' and not 'subsequent MRI scan and x-rays.' … Dr. Barron does not list a post-accident MRI in his medical record review." LIRC therefore found that "any reference by Dr. Barron to a 2014 post-injury MRI is a typo and that he was not relying upon a phantom report when he reached his conclusions about [McRoberts'] condition."

¶9     LIRC further found "it is not clear that Dr. Fitzgerald was aware of [McRoberts'] significant history of bilateral and right-sided back pain." LIRC noted McRoberts "had severe pain and symptoms on or around March 25, 2013, shortly before the work incident. In addition, Fitzgerald did not begin treating [McRoberts] until early in 2015." LIRC also noted that McRoberts "was seen for severe back pain on April 12, 2013, shortly prior to the work incident of April 17, 2013."

¶10     LIRC also noted that the ALJ did not find McRoberts credible because, among other things, her testimony was "vague and inconsistent." After reviewing the record, LIRC agreed with the credibility impression of the ALJ. LIRC also agreed with the ALJ's disability determination, and it affirmed and adopted as its own the ALJ's findings and conclusions.

¶11     The circuit court confirmed LIRC's order. The court concluded this case "presents a question of credibility of expert witnesses," and it noted that the denial of McRoberts' application "was based on a finding that Dr. Barron's opinion, which did not support Ms. McRoberts' claim, was more credible than Dr. Fitzgerald's opinion that supported Ms. McRoberts' application." The court

found LIRC acted within its power and that its findings of fact supported its decision. The court also found that LIRC's reliance on Barron's opinions rather than Fitzgerald's opinions was supported by credible and substantial evidence, and that reasonable minds could accept Barron's opinions as adequate to support the denial of the application. McRoberts now appeals.

## DISCUSSION

¶12    We review LIRC's decision, not the circuit court's. *Pick 'n Save Roundy's v. LIRC*, 2010 WI App 130, ¶8, 329 Wis. 2d 674, 791 N.W.2d 216. LIRC's findings of fact are conclusive if supported by credible and substantial evidence, and factual findings include the drawing of one of several reasonable inferences from undisputed facts. *See* WIS. STAT. § 102.23(6) (2017-18); *Bosco v. LIRC*, 2003 WI App 219, ¶24, 267 Wis. 2d 293, 671 N.W.2d 331, *aff'd*, 2004 WI 77, ¶24, 272 Wis. 2d 586, 681 N.W.2d 157. "Credible evidence" is that evidence which excludes speculation or conjecture. *Milwaukee Bd. of Sch. Dirs. v. WERC*, 2008 WI App 125, ¶7, 313 Wis. 2d 525, 758 N.W.2d 814. Evidence is "substantial" if a reasonable person relying on the evidence might make the same decision. *Id.* LIRC is the sole judge of the weight and credibility of medical witnesses. *Bumpas v. DILHR*, 85 Wis. 2d 805, 817, 271 N.W.2d 142 (Ct. App. 1978). If there are contradictory medical reports, it is for LIRC to decide if one expert's testimony is more persuasive than another's. *Id.*

¶13    McRoberts requests that we set aside LIRC's order because it depends on findings that are not supported by credible and substantial evidence. In this regard, McRoberts does not question whether Dr. Barron's opinions are more credible than Dr. Fitzgerald's opinions. According to McRoberts, the issue here is whether Barron's opinions, "when considering the record as a whole, [are]

so completely discredited they are incredible as a matter of law[.]" Essentially, McRoberts argues that Barron's reference to the non-existent MRI "was not a typographical error, but the foundational predicate Barron gave for his opinions." Because the foundational basis Barron provided for his opinions did not exist, McRoberts contends the opinions are completely discredited and must be disregarded.

¶14   First, we conclude LIRC's finding that Dr. Barron's report contained a "typo" is a proper inference drawn from the evidence as a whole. *See **Crystal Lake Cheese Factory v. LIRC***, 2003 WI 106, ¶25, 264 Wis. 2d 200, 664 N.W.2d 651. LIRC reasonably inferred that Barron intended to say "subsequent x-rays" and not "subsequent MRI scan and x-rays." Barron noted at page 3 of his report that McRoberts' post-accident x-rays showed "mild degenerative disc disease." Throughout that report, Barron noted that McRoberts had MRI scans taken *before* her workplace fall. He did not reference anywhere else in his report any post-injury MRI. As LIRC correctly observed, Barron did not list a post-accident MRI in his medical record review. It is also undisputed that x-rays were taken subsequent to McRoberts' parking lot fall. Moreover, to the extent McRoberts implies that LIRC's finding of a typographical error is not evidence that a reasonable mind might accept, we note that the ALJ and the circuit court made the same decision as LIRC.

¶15   McRoberts also misconstrues LIRC's decision by suggesting that LIRC improperly relied upon the "opinion" of counsel that Dr. Barron's report contained a "typo," which is not evidence. However, LIRC did not consider counsel's statement in this regard made at the start of the hearing to be testamentary evidence. Rather, counsel made an argument, and LIRC stated that it

"agrees with the respondent" that Barron's reference to a "subsequent MRI scan" was a typographical error.

¶16    In her reply brief, McRoberts makes much of the fact that Dr. Barron did not correct or clarify the "typo" in his subsequent report. There would be no need for Barron to do so, however, because by then his opinion had changed, and he no longer concluded McRoberts sustained any injury in her fall.

¶17    We also reject McRoberts' contention that a foundational basis for Dr. Barron's opinions did not exist. LIRC's finding that McRoberts' slip and fall in her employer's parking lot did not cause a permanent and compensable workplace injury relied in part on Barron's expert opinion from his first report. In that report, Barron opined that McRoberts suffered a thoracolumbar soft tissue sprain; that the fall temporarily aggravated her longstanding pre-existing back condition; and that the soft tissue sprain resolved within three months. LIRC also relied on Barron's explanation that before her workplace injury, McRoberts had "a strong history of prior complaints of thoracolumbar pain" and had been "treated for years for this condition." Barron also emphasized that less than one month before her fall in the employer's parking lot, McRoberts had an MRI scan with an indication of low back pain extending down her right leg. Barron's first report constituted credible and substantial evidence supporting LIRC's decision.

¶18    Given the above analysis, together with the remainder of the evidence—including but not limited to LIRC's findings that McRoberts was not credible and that Dr. Fitzgerald's opinion was based, in part, upon an incorrect history—LIRC reasonably concluded that McRoberts sustained a soft tissue injury that fully resolved by July 17, 2013, as opined by Dr. Barron in his first report. LIRC correctly denied McRoberts' claim for permanent partial disability and it

properly found that her ongoing symptoms were a continuation of her longstanding pre-existing back problems.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).